Betty TAGGART, Appellant,

v.

TRANS WORLD AIRLINES, INC., Appellee.

No. 91–2246.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 7, 1992.

Decided Nov. 10, 1994.

John Douglas Lynn, St. Louis, MO, argued (Michael J. Hoare, on brief), for appellant.

John Benton Renick, St. Louis, MO, argued, for appellee.

Before ARNOLD, Chief Judge, and McMILLIAN and HANSEN, Circuit Judges.

McMILLIAN, Circuit Judge.

Betty Taggart appeals from a final order entered in the District Court for the Eastern District of Missouri dismissing her state law handicap discrimination claim for lack of jurisdiction as pre-empted by the Railway Labor Act (RLA), 45 U.S.C. § 151 *et seq.* For reversal Taggart argues the district court erred in holding her state law handicap discrimination claim was pre-empted by the RLA. For the reasons discussed below, we reverse the order of the district court and remand the case to the district court for further proceedings.

In 1970 Taggart began working for Trans World Airlines, Inc. (TWA), as a flight attendant. Her employment was governed by a collective bargaining agreement between the International Federation of Flight Attendants (the union) and TWA. In 1976 Taggart underwent hip replacement surgery and later returned to work. In October 1987 Taggart was placed on medical leave at her request. In January 1988 she underwent a second hip replacement surgery on the same hip, and her medical leave was extended through 1988. In December 1988 TWA determined that, on the basis of a medical examination, Taggart was "permanently" unable to perform the duties of a flight attendant. In January 1989 TWA advised Taggart by letter that her medical leave would be extended through March 1, 1989, but that no further extensions would be granted, and that she would be "administratively severed" from employment at the end of her medical leave. On March 1, 1989, TWA terminated Taggart.

On March 7, 1989, Taggart, through a union representative, initiated grievance proceedings challenging her termination. The union argued that TWA had violated various provisions in the collective bargaining agreement with respect to leaves of absence, independent medical examinations, and procedural protections for discharge. On April 5, 1989, Taggart's physician determined that she was able to return to work.

Meanwhile, in July 1990, Taggart filed an action in state court against TWA under the Missouri Human Rights Act, Mo.Rev.Stat. § 213.010–.126 (1986). Taggart alleged that TWA had unlawfully terminated her because it had "perceived" that she had a physical impairment without regard to whether her perceived impairment interfered with her job performance or whether the perceived impairment could be reasonably accommodated. She sought compensatory damages for lost wages and for emotional distress as well as punitive damages. The complaint did not refer to any provisions of the collective bargaining agreement. TWA removed the case to federal district court on the basis of diversity of citizenship and moved to dismiss for lack of subject matter jurisdiction. TWA argued that the system board of adjustment has exclusive jurisdiction over this dispute because the RLA pre-empts state handicap discrimination claims of covered employees like Taggart.

The district court held that Taggart's state handicap discrimination claim was pre-empted by the RLA because of the "strong similarity" between the grievance proceeding before the system board of adjustment and the judicial action alleging handicap discrimination in violation of state law. Slip op. at 4–6, 1991 WL 84489, citing McCall v. Chesapeake & Ohio Ry., 844 F.2d 294, 300–01 (6th Cir.) (McCall), cert. denied, 488 U.S. 879, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988). In McCall the plaintiff was a railroad engineer who had diabetes. The employer told the plaintiff that safety considerations precluded him from driving equipment, working around dangerous or moving equipment, working at unprotected elevations, or working alone. Under the collective bargaining agreement, a medically disqualified engineer could exercise seniority to work as a "fireman" if physically able to do so. However, the railroad refused to allow the plaintiff to work as a fireman because the same safety considerations applied to that position. The collective bargaining agreement further provided for the appointment of a three-physician board to review findings of physical disqualification and make a final and binding decision. The railroad and the plaintiff each selected one physician and the third was selected by the other two. The board found that the plaintiff was medically disqualified from working either as an engineer or as a fireman. The plaintiff then filed an action against the railroad alleging violation of the state handicap rights law. The railroad alleged that the state handicap action was pre-empted by the RLA. The Sixth Circuit held the state handicap action was pre-empted because the "strong similarity" between the inquiry made by the arbitration board and the inquiry made in the state civil action could frustrate the operation of the RLA. 844 F.2d at 300–01.

In the present case the district court compared the system board of adjustment with the physician review board in McCall. The district court concluded that Taggart's state law handicap discrimination claim was pre-empted because the system board of adjustment and the state court would have had to decide the same issue, that is, whether Taggart was physically able to perform her job.

Slip op. at 3. The district court also distinguished Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988) (Lingle), on the ground that Taggart's state law handicap discrimination claim would require interpretation of the collective bargaining agreement's medical leave provisions and was thus "dependent" upon the collective bargaining agreement. Slip op. at 3. This appeal followed. The appeal was initially held in abeyance pending the TWA reorganization in bankruptcy and then because a similar case involving pre-emption under the RLA was then pending before the Supreme Court, Hawaiian Airlines, Inc. v. Norris, —— U.S. ——, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994) (Norris).

For reversal, Taggart argues the RLA does not pre-empt state statutes designed to provide "minimum substantive guarantees" to workers which are independent of and distinct and separate from employer obligations under collective bargaining agreements, citing in support Atchison, T. & S.F. Ry. v. Buell, 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987) (Buell) (holding FELA claim for failure to provide safe workplace was not pre-empted by RLA), and Colorado Anti–Discrimination Comm'n v. Continental Air Lines, Inc., 372 U.S. 714, 83 S.Ct. 1022, 10 L.Ed.2d 84 (1963) (holding state law racial discrimination claim not barred by RLA). Taggart argues the Missouri Human Rights Act is just such a minimum substantive guarantee that is independent of employer obligations under the collective bargaining agreement. She argues that resolution of her state law handicap discrimination claim, that is, whether TWA discharged her because of a perceived handicap and whether TWA refused to reasonably accommodate her perceived handicap, does not require interpretation of the collective bargaining agreement.

TWA argues the district court correctly held that Taggart's state handicap discrimination claim was pre-empted by the RLA because the conflict over Taggart's discharge is a "minor" dispute subject to resolution exclusively through the grievance and arbitration proceedings. TWA argues that resolution of her state claim would necessarily

require interpretation of the collective bargaining agreement because Taggart was placed on medical leave and later terminated pursuant to that agreement. TWA cites in support *McCall, Espinosa v. Norfolk & W. Ry.*, 750 F.Supp. 819 (E.D.Mich.1990) (claim that discharge violated state handicap discrimination law held "minor" dispute and pre-empted by RLA), *aff'd*, 946 F.2d 894 (6th Cir.1991) (table), *Underwood v. Trans World Airlines, Inc.*, 710 F.Supp. 78 (S.D.N.Y.1989) (same), and *Robinson v. Trans World Airlines, Inc.*, No. CV–89–4084 (E.D.N.Y. Dec. 13, 1990) (same), *aff'd*, 947 F.2d 40 (2d Cir. 1991) (per curiam).

■ "Whether federal law pre-empts a state law establishing a cause of action is a question of congressional intent." *Norris*, — U.S. at —, 114 S.Ct. at 2243. The RLA was enacted in 1926 and was extended to cover the airline industry in 1936. "Congress' purpose in passing the RLA was to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." *Id.* "[T]he Act establishes a mandatory arbitral mechanism for 'the prompt and orderly settlement' of two classes of disputes." *Id.* Disputes concerning "rates of pay, rules of working conditions" are "major" disputes. 45 U.S.C. § 151a. "Major" disputes involve "the formation of collective bargaining agreements or efforts to secure them." *Consolidated Rail Corp. v. Railway Labor Executives' Ass'n*, 491 U.S. 299, 302, 109 S.Ct. 2477, 2480, 105 L.Ed.2d 250 (1989) (*Conrail*) (internal citation omitted). In comparison, "minor" disputes "gro[w] out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." 45 U.S.C. § 151a. "Minor" disputes involve "controversies over the meaning of an existing collective bargaining agreement in a particular fact situation." *Brotherhood of R.R. Trainmen v. Chicago R. & I. R.R.*, 353 U.S. 30, 33, 77 S.Ct. 635, 637, 1 L.Ed.2d 622 (1957). "[M]ajor disputes seek to create contractual rights, minor disputes to enforce them." *Conrail*, 491 U.S. at 302, 109 S.Ct. at 2479. The RLA thus pre-empts state law claims that involve minor disputes because such disputes are subject to mandatory arbitration. However, states can pro-

vide workers with substantive rights independent of the collective bargaining agreement and causes of action to enforce such rights are not pre-empted by the RLA. *Norris*, — U.S. at —, 114 S.Ct. at 2246, *citing Missouri Pac. R.R. v. Norwood*, 283 U.S. 249, 258, 51 S.Ct. 458, 462, 75 L.Ed. 1010 (1931), *and Andrews v. Louisville & N. R.R.*, 406 U.S. 320, 324, 92 S.Ct. 1562, 1565, 32 L.Ed.2d 95 (1972) (*Andrews*). Thus, the critical question is one of characterization—does the state law claim involve interpretation or application of the collective bargaining agreement or, stated another way, is the state law claim independent of the collective bargaining agreement.

■ We review the district court's pre-emption decision de novo. *See, e.g., Calvert v. Trans World Airlines, Inc.*, 959 F.2d 698, 699 (8th Cir.1992) (*Calvert*). We think *Norris* narrowed the scope of federal pre-emption under the RLA. *See Westbrook v. Sky Chefs, Inc.*, 35 F.3d 316, 317–18 (7th Cir. 1994) (*Norris* overrules prior pre-emption standard); *Piper v. Alaska Airlines, Inc.*, 34 F.3d 1073 (9th Cir.1994) (table) (text at 1994 WL 424292, at *4) (same).

In *Norris* an aircraft mechanic refused to sign an aircraft maintenance record to certify the safety of an aircraft that he considered unsafe. The terms of the mechanic's employment were governed by a collective bargaining agreement. The supervisor suspended the mechanic pending a termination hearing. The mechanic reported the maintenance problem to the Federal Aviation Administration (FAA). The mechanic invoked the grievance procedure outlined in the collective bargaining agreement. The airline accused the mechanic of insubordination. The mechanic relied on the guarantees in the collective bargaining agreement that an employee may not be discharged without just cause and may not be disciplined for refusing to perform work that is in violation of health or safety laws. The hearing officer terminated the mechanic for insubordination. The mechanic appealed the termination but did not take any other action.

The mechanic then filed a wrongful discharge action against the airline in state

court, alleging violation of the state whistleblower protection act as well as breach of the collective bargaining agreement and violation of public policy. The airline removed the action to federal district court. The federal district court dismissed the breach of contract claim as pre-empted by the RLA and remanded the case to the state trial court. The state trial court dismissed the discharge in violation of public policy claim as pre-empted by the Railway Labor Act and then certified its order as final in order to permit an immediate appeal. In the meantime the mechanic had filed a second wrongful discharge action, this time against individual airline officers, in state court, alleging retaliatory discharge and discharge in violation of public policy and the state whistleblower protection act. The state trial court dismissed the public policy and whistleblower counts as pre-empted by the RLA and certified the case for immediate appeal. The state supreme court reversed both cases, holding the RLA did not pre-empt the state tort claims because determining whether the airline terminated the mechanic in retaliation for filing an FAA complaint did not require interpretation of the collective bargaining agreement. The Supreme Court granted certiorari and held that the RLA did not pre-empt the mechanic's state law causes of action for wrongful discharge. *Id.* at ——, 114 S.Ct. at 2243–51. In so holding, the Court adopted the *Lingle* pre-emption standard to resolve claims of RLA pre-emption. *Id.* at ——, 114 S.Ct. at 2249.

The Court emphasized that in *Andrews* a state law claim of wrongful termination was held pre-empted by the RLA, "*not* because the RLA broadly pre-empts state law claims based on discharge or discipline, but because the employee's claim was firmly rooted in a breach of the [collective bargaining agreement] itself." *Id.* at ——, 114 S.Ct. at 2246 (emphasis in original). The Court noted that, under the facts in *Andrews,* the employee had asserted "no right independent of that agreement" and "the only source of [the employee's] right not to be discharged, and therefore to treat an alleged discharge as a 'wrongful' one . . . is the [collective bargaining agreement]." *Id.* In contrast, the Court noted that in *Norris* the collective bargaining

agreement was not the "only source" of the mechanic's right not to be discharged wrongfully; instead, the "only source" of the right the mechanic asserted was state tort law. *Id.* The Court further noted that "[t]he parties' obligation under the RLA to arbitrate disputes arising out of the application or interpretation of the [collective bargaining agreement] did not relieve [them] of this duty." *Id.* The Court held that "a state-law cause of action is not pre-empted by the RLA if it involves rights and obligations that exist independent of the collective-bargaining agreement." *Id.* at ——, 114 S.Ct. at 2247. The Court noted that this pre-emption standard is "virtually identical to the pre-emption standard the Court employs in cases involving § 301 of the [Labor Management Relations Act], 29 U.S.C. § 185." *Id.* (footnote omitted).

The Court cautioned that the "existence of a potential [collective bargaining agreement]–based remedy [does] not deprive an employee of independent remedies available under state law." *Id.* at ——, 114 S.Ct. at 2248. The Court noted that the state law claim is only pre-empted where its resolution "depends upon an interpretation of the collective bargaining agreement." *Id.* The Court observed, however, that "'purely factual questions' about an employee's conduct or an employer's conduct and motives do not 'requir[e] a court to interpret any term of a collective-bargaining agreement.'" *Id., citing Lingle,* 486 U.S. at 408, 108 S.Ct. at 1882–83. In particular, the Court expressly rejected the argument that the RLA pre-empts a state law claim if the "same factual inquiry" is involved under state law and the collective bargaining agreement. *Id.* at ———–———, 114 S.Ct. at 2248–49. Quoting extensively from the analysis in *Lingle,* the Court noted that

> even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for [Railway Labor

Act as well as] § 301 pre-emption purposes.

*Id.* at ——, 114 S.Ct. at 2249, *citing Lingle,* 486 U.S. at 408–10, 108 S.Ct. at 1883.

The Court also expressly rejected the argument that the RLA pre-empts a state law claim if the employer's action is "arguably justified" by the terms of the collective bargaining agreement. *Id.* at —— – ——, 114 S.Ct. at 2250–51. A dispute is considered minor "if there was a sincere, nonfrivolous argument that it turned on the application of the existing [collective bargaining] agreement, that is, if it was 'arguably justified' by that agreement." *Id.* at —— – ——, 114 S.Ct. at 2250–51. The Court noted, however, that the "arguably justified" standard was "employed only for policing the line between major and minor disputes" and that this standard "said nothing about the threshold question whether the dispute was subject to the RLA in the first place." *Id.* at ——, ——, 114 S.Ct. at 2250, 2251.

■ Following the analysis in *Norris,* we think Taggart's state law handicap discrimination claim is not pre-empted by the RLA. The question under *Norris* is whether Taggart's state law handicap discrimination claim is independent of the collective bargaining agreement. First, as in *Norris,* the collective bargaining agreement is not the "only source" of Taggart's right not to be terminated wrongfully. In fact, like the mechanic in *Norris,* the "only source" of the right Taggart asserted in the present case is state law, that is, she claimed TWA wrongfully terminated her in violation of state law, independent of the collective bargaining agreement. Next, under *Norris,* the fact that Taggart may have a potential remedy based on the collective bargaining agreement does not deprive her of independent remedies available under state law. This is so even where the resolution of the state law claim and the claim under the collective bargaining agreement will involve the "same factual inquiry."

Nor do we think that resolution of Taggart's state law claim requires a determination whether the termination was justified by the collective bargaining agreement. Such a determination would be required if Taggart had alleged termination in violation of the collective bargaining agreement. However, in the present case, Taggart asserts that TWA terminated her on the basis of a perceived physical handicap in violation of state law. Under *Norris* the employer's motive is a purely factual inquiry which does not require interpretation of the collective bargaining agreement.

We think this is true even though Taggart's state law claim involves handicap discrimination. Unlike retaliatory discharge or race discrimination, "conduct that is not by any construction a subject for collective bargaining and arbitration," *McCall,* 844 F.2d at 302, handicap discrimination involves the employee's physical condition and job performance. The rules and procedures contained in collective bargaining agreements often set certain requirements for physical condition and job performance. Thus, the argument is that, when the collective bargaining agreement establishes such requirements, state law handicap discrimination claims are pre-empted because it is impossible to determine whether the employee is handicapped without interpreting the collective bargaining agreement. *See Croston v. Burlington Northern R.R.,* 999 F.2d 381, 388–89 (9th Cir.1993) (*Croston*); *O'Brien v. Consolidated Rail Corp.,* 972 F.2d 1, 5 (1st Cir.1992) (*O'Brien*), *cert. denied,* —— U.S. ——, 113 S.Ct. 980, 122 L.Ed.2d 134 (1993); *Calvert,* 959 F.2d at 700; *McCall,* 844 F.2d at 302; *cf. Berkowski v. St. Louis County Bd. of Election Comm'rs,* 854 S.W.2d 819, 826 (Mo.Ct. App.1993) (person is not "handicapped" within meaning of state human rights act if physical impairment interferes with job performance unless reasonable accommodations can be made).

We think *Croston, O'Brien, Calvert,* and *McCall* are distinguishable from the present case. First, these cases were decided before *Norris* and, as discussed above, *Norris* narrowed the scope of RLA pre-emption. Under *Norris,* the "same factual inquiry" and the "arguably justified" tests are no longer grounds for pre-emption and, to the extent these cases rely on those grounds, they have been undermined. *See McCall,* 844 F.2d at 302–03 (where same factual inquiry, arbitration process is exclusive remedy); *Calvert,*

959 F.2d at 700 (arguably justified). In addition, in *Croston, O'Brien* and *Calvert,* state law was not the "only source" of the employee's claims because the claims depended at least in part on the collective bargaining agreements. For example, in *Croston* the employee asserted he had been denied certain benefits under the collective bargaining agreement given to similarly situated workers, 999 F.2d at 385, 388; in *O'Brien* the employee asserted he was entitled to "bump" an employee with less seniority from a particular job under the collective bargaining agreement, 972 F.2d at 5; in *Calvert,* the employee asserted that the employer had abused its rights to require medical testing under the collective bargaining agreement, 959 F.2d at 700. That is not true in the present case; the only source of Taggart's claim is state law.

Accordingly, we hold that, under *Norris,* Taggart's state law handicap discrimination claim is not pre-empted by the RLA. We reverse the order of the district court and remand the case to the district court for further proceedings.