**Terrance C. HOGAN, Plaintiff,**

v.

**NORTHWEST AIRLINES, INC.,**
**a Minnesota corporation,**
**Defendant.**

Civ. No. 3–94–1279.

United States District Court,
D. Minnesota,
Third Division.

March 7, 1995.

Carole Ryden, Boehm Law Office, Saint Paul, MN, for plaintiff.

Thomas W. Tinkham and William A. Dossett, Dorsey & Whitney, Minneapolis, MN, for defendant.

## MEMORANDUM OPINION AND ORDER

KYLE, District Judge.

### Introduction

Before the Court is the Defendant Northwest Airlines' ("Northwest") Motion for Summary Judgment on the Complaint, brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Terrance Hogan ("Hogan") commenced this action in federal court, alleging a single claim of disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213. For the reasons set forth below, the Court will grant the motion.

1. Although the collective bargaining agreement was scheduled to expire in April of 1992, Norwest and IAMAW agreed to extend it to August of 1993.

2. The "Bid Desk" processes both requests for personnel from the various Northwest departments and employee applications for open positions. (Aff. of Vivian Trembley, ¶ 2.) The procedures used by the Bid Desk are generally required by the terms of the applicable collective bargaining agreements. (*Id.*)

### Background

Hogan began working as a flight attendant in 1976 for an airline which, through a series of mergers and acquisitions culminating in the 1986 merger of Republic Airlines and Northwest, became part of Northwest. (Compl., ¶ 6; Answer, ¶¶ 6, 7.) Hogan alleges that, at some point during his employment as a flight attendant, he sustained an on-the-job injury that caused his present disability. (Compl., ¶ 6.)

Hogan began working as a mechanic for Northwest in March of 1992. (Aff. of Pat Lipe, Exh. C.) In that position, Hogan was covered by a collective bargaining agreement between Northwest and the International Association of Machinists and Aerospace Workers ("IAMAW"), commonly referred to as the "Blue Book."[1] Employment documents from Northwest indicate that Hogan was on layoff status; Hogan alleges that he was laid off on July 23, 1992, as the result of a reduction in force. (Aff. of Pat Lipe, Exh. C.) On October 6, 1992, Hogan filed with the "Bid Desk"[2] a "Letter of Interest" for a permanent, full-time janitor position in the Plant Maintenance department at Northwest's Minneapolis facility. (Aff. of Vivian Trembley, Exh. C.)

In October of 1992, Northwest posted openings for temporary janitorial positions in the Plant Maintenance department in Minneapolis. The postings referred to in this litigation are System Bulletin Numbers 92–354 and 92–360.[3] The application period for posting number 92–354, involving two full-time 120–day positions, closed on October 13, 1992. Three employees submitted bids for Bulletin No. 92–354: Hogan, Tammy Drinkall and Vicki Hauser.[4] Pat Lipe, the Plant

3. The requirements of the posting and the bidding processes are set forth in Article Nine of the Blue Book. (Aff. of Pat Lipe, Exh. E.)

4. Hogan's System Bulletin Bid was received by the "Bid Desk" on October 6, 1992. (Aff. of Vivian Trembley, Exh. A.) According to the bid form, Hogan was submitting his bid "for the classification of *Temp. Janitor (Plant Maint.)* at (bid location) *MSP* under System Bulletin Number *92–354.*" (*Id.* (underlined material indicates words handwritten by plaintiff).) The bid form also asks the applicant to indicate an order of

Maintenance–Cleaning manager in Minneapolis, awarded the open positions to Drinkall and Hauser, whom he had previously interviewed.

On October 19, 1992, Lipe met with Hogan. Northwest contends that the meeting was held at the request of someone from the Human Resources department. (Aff. of Pat Lipe, ¶ 10.) Hogan asserts that it was held in response to the applications he had submitted for various janitorial positions. The parties dispute what was discussed at this meeting, although they agree that the topic of plaintiff's medical condition arose and Lipe inquired whether Hogan could perform the essential functions of the janitorial position. (Answer, ¶ 10.)

The application period for Bulletin No. 92–360, involving one full-time 120–day position, closed on October 19, 1992. Five employees' names were forwarded from the Bid Desk to Lipe: Hauser, Erwin Trotter, James Dupree, Michael Evans and Beth Buhler. (Aff. of Pat Lipe, Exh. D.) Lipe received the list of names on October 20. Lipe awarded the position to James Dupree, a non-disabled person, after interviewing him. (Aff. of Pat Lipe, ¶ 16.) On October 22, 1992, Hogan called Lipe and learned that the 92–360 position had been filled.

On October 26, 1992, Hogan filed a charge with the EEOC, alleging that Lipe had discriminated against him on the basis of a disability. (Compl., ¶ 15; Answer, ¶ 15.) On September 20, 1993, the EEOC issued a determination letter which dismissed the charge and notified Hogan of his right to sue. (Compl., ¶ 16; Answer, ¶ 16.) Hogan has not subsequently found a position at Northwest.

### Analysis

#### I. Standard of Decision

■ Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. Under that Rule:

[summary] judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). Stated in the negative, summary judgment will be denied where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The focus of a summary judgment motion is on the presence of issues of material fact; disputed issues of fact that will not affect the outcome of the action are not sufficient to withstand a properly supported motion for summary judgment. *Fischer v. NWA, Inc.*, 883 F.2d 594, 597 (8th Cir.1989), *cert. denied*, 495 U.S. 947, 110 S.Ct. 2205, 109 L.Ed.2d 531 (1990).

■ On a motion for summary judgment, the movant bears the burden of bringing forward sufficient evidence to establish that there are no material issues of fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The evidence of the non-moving party is to be believed and all justifiable inferences are to be drawn in the light most favorable to that party. *Matsushita Elec. Indus. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1357, 89 L.Ed.2d 538 (1986); *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513; *Trnka v. Elanco Prod.*, 709 F.2d 1223, 1225 (8th Cir.1983). Where a moving party, with whatever it provides the court, makes and supports a motion for summary judgment in accordance with Rule 56, a party opposing the motion may not rest upon the allegations or denials of his pleadings; rather, the adverse party's response must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. That is, the party opposing the motion for summary judgment must make a showing sufficient to establish the existence of every element essential to that party's case, and on which that party will bear the burden of proof at trial. *Fisch-*

preference if he or she is applying for more than one position that close on the same day. On Hogan's bid form, he indicated that he was ap-

plying for two positions which closed on the same day.

*er,* 883 F.2d at 599. Where a party opposing the motion fails to establish the existence of an essential element, all other facts are immaterial and the moving party is entitled to judgment as a matter of law because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. *Id.*

Northwest argues that it is entitled to summary judgment for three reasons. First, Northwest contends that Hogan cannot establish a prima facie case of discriminatory failure to hire because he cannot establish that he applied for the position he claims he was denied. Second, Northwest argues that it has articulated legitimate non-discriminatory reasons for its decision to hire Dupree which Hogan has not shown to be pretextual. Finally, Northwest asserts that Hogan's suit is preempted by the mandatory and exclusive arbitration provisions of the collective bargaining agreement then in force between Northwest and the IAMAW. The Court will begin with the preemption argument.

## II. The Railway Labor Act and Mandatory Arbitration under the Collective Bargaining Agreement

The Railway Labor Act ("RLA"),[5] 45 U.S.C. §§ 151–188, was enacted "to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." *Hawaiian Airlines, Inc. v. Norris,* —— U.S. ——, ——, 114 S.Ct. 2239, 2243, 129 L.Ed.2d 203 (1994) (citation omitted); *see* 45 U.S.C. § 151a. The RLA divides labor disputes relating to pay rates, rules, and working conditions into two categories—"major" and "minor;" "major disputes seek to create contractual rights, minor disputes seek to enforce them." *Consolidated Rail Corp. v. Railway Labor Executives' Assn.,* 491 U.S. 299, 302, 109 S.Ct. 2477, 2480, 105 L.Ed.2d 250 (1989). A minor dispute "grow[s] out of grievances or out of the interpretation and application of agreements concerning rates of pay, rules, or working conditions." 45 U.S.C. § 153, first (i). If a dispute is classified as "minor," the RLA provides the exclusive means for resolving the dispute. 45 U.S.C. § 184. In determining whether a dispute is minor, it is irrelevant whether the legal basis for the claim derives from a source other than the collective bargaining agreement. *Deford v. Soo Line R.R.,* 867 F.2d 1080, 1086 (8th Cir.), *cert. denied,* 492 U.S. 927, 109 S.Ct. 3265, 106 L.Ed.2d 610 (1989). The question is whether the claim requires the interpretation and application of the collective bargaining agreement.

Northwest contends that Hogan's claim of disability discrimination requires interpretation and application of the Blue Book and, therefore, is a "minor dispute" under the RLA. Specifically, Northwest asserts that any determination of whether Hogan is a "qualified individual with a disability"[6] will involve interpreting and/or applying those portions of the Blue Book which pertain to the functions a janitor is expected to perform. *See O'Brien v. Conrail,* 972 F.2d 1, 5 (1st Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 980, 122 L.Ed.2d 134 (1993). Northwest further argues that the issue of whether Hogan "applied" for the position in question[7] involves the interpretation and application of the procedures for filling vacancies set forth in Article 9 of the Blue Book.

Hogan argues that his dispute does not involve the interpretation or application of

---

**5.** The RLA was extended in 1936 to cover the airline industry. Act of Apr. 10, 1936, ch. 166, 49 Stat. 1189, *codified at* 45 U.S.C. §§ 181–188.

**6.** A "qualified individual with a disability" is defined by the ADA as an individual "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such an individual holds or desires." 42 U.S.C. § 12111(8).

**7.** Although plaintiff contends in his summary judgment papers that he is alleging discriminatory failure to hire with respect to both the 92–354 and 92–360 postings, his complaint clearly relates only to the latter posting. *See* Compl., ¶ 8 ("On or about October 19, 1992, Plaintiff applied for a janitorial position with Defendant."); *Id.* at ¶ 9 ("Plaintiff was interviewed for the janitorial position by Pat Lipe . . . an agent and employee of Defendant."); *Id.* at ¶ 11 ("Thereafter, upon information and belief, another non-disabled individual was hired to fill the janitorial position.").

any term of the Blue Book because he has not alleged that Northwest's failure to hire him violated the collective bargaining agreement. Hogan further asserts that the Blue Book does not apply to the janitorial positions at issue here because those positions became "company select" positions when it appeared that no "eligible bidders" had applied to fill them, thus taking them outside the scope of the Blue Book's vacancy procedures. Finally, Hogan contends that section 12201(b) of the ADA prohibits the resolution of a disability discrimination claim in any manner which fails to provide equal or greater protections than the ADA.

■ In *Hawaiian Airlines*, Norris, an aircraft mechanic, was terminated after he refused to sign a maintenance record for an aircraft he determined to be unsafe and reported the issue to the Federal Aviation Administration. Norris filed suit in state court alleging wrongful termination. The Court concluded that Norris' state law wrongful discharge action was not pre-empted by the RLA because

> the CBA [collective bargaining agreement] is not the "only source" of respondent's right not to be discharged wrongfully. In fact, *the "only source" of the right respondent asserts in this action is state tort law.* Wholly apart from any provision of the CBA, petitioners had a state-law obligation not to fire respondent in violation of public policy or in retaliation for whistleblowing.

— U.S. at ——, 114 S.Ct. at 2246 (emphasis added). The Supreme Court has reached a similar result in assessing the relationship between the RLA and a claim brought pursuant to the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51–60. The Court reasoned that "the FELA not only provides railroad workers with substantive protection against negligent conduct that is *independent of the employer's obligations under its collective bargaining agreement,* but also affords injured workers a remedy suited to their needs, unlike the limited relief that seems to be available through the Adjustment Board." *Atchison, Topeka & Santa Fe Railway Co. v. Buell,* 480 U.S. 557, 565, 107 S.Ct. 1410, 1415, 94 L.Ed.2d 563 (1987) (emphasis added). Thus, when a state or federal law claim

involves " 'purely factual questions' about an employee's conduct or an employer's conduct and motives," it is not necessary to interpret any term of the collective bargaining agreement and the RLA's procedures are not implicated. *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 407, 108 S.Ct. 1877, 1882, 100 L.Ed.2d 410 (1988). As the Eighth Circuit recently observed, to determine whether a particular claim must be resolved through the RLA's procedures, "the critical question is one of characterization." *Taggart v. Trans World Airlines,* 40 F.3d 269, 272 (8th Cir.1994).

In *Taggart,* the Eighth Circuit Court of Appeals held that an employee's state law handicap discrimination claim against an airline was not pre-empted by the RLA. 40 F.3d at 275. Taggart, a flight attendant, brought suit under the Missouri Human Rights Act, claiming that she was wrongfully terminated on the basis of a "perceived" handicap. *Id.* at 270. Trans World Airlines ("TWA") had placed Taggart on medical leave pursuant to the terms of the collective bargaining agreement, and Taggart had undergone hip replacement surgery. At the end of her medical leave, TWA informed Taggart that she was "permanently" unable to perform the duties of a flight attendant and would receive no additional medical leave beyond a two month extension. As in *Hawaiian Airlines,* the plaintiff's state law claim for discriminatory discharge centered on the employer's actions and motives, thus, presenting a "purely factual inquiry which does not require interpretation of the collective bargaining agreement." *Id.* at 274. The Court concludes that both *Hawaiian Airlines* and *Taggart* are distinguishable from the case at bar.

■ The question presented here is whether the substantive protections afforded Hogan by the ADA are independent of the employer's obligations under the collective bargaining agreement. Assuming *arguendo* that Hogan is a "qualified individual with a disability" who is entitled to the protections of the ADA, his statutory right not to be denied employment on the basis of his disability is implicated *only* if he in fact applied for the position he claims he was denied.

Northwest argues before this Court that Hogan did not apply for the Bulletin Number 92–360 position in accordance with the procedures set forth in Article 9 of the Blue Book.[8] To determine whether Hogan has stated a prima facie case of discriminatory failure to hire under the ADA, the Court must necessarily determine whether Hogan's conduct constituted an "application" under the terms of the collective bargaining agreement. Such a determination requires the interpretation and application of the vacancy provisions of the Blue Book, a determination committed by Congress to the exclusive procedures of the RLA. Plaintiff's claim for disability discrimination cannot be decided "wholly apart" from the collective bargaining agreement; his claim does not present "purely factual issues" which do not require interpretation and application of the collective bargaining agreement. Accordingly, the Court will grant summary judgment on the grounds that plaintiff's claim involves a "minor dispute" committed exclusively to resolution through the procedures of the RLA.[9]

### Conclusion

Based on the foregoing, and all of the files, records and proceedings herein, **IT IS ORDERED** that Defendant Northwest Airlines' Motion for Summary Judgment (Doc. No. 28) is **GRANTED**. Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

---

8. Hogan's argument that the "company select" nature of the position takes it out of the Blue Book procedures addresses the method of *selection*, not the method of application. Hogan cites no provision of the collective bargaining agreement which states that interested employees need not submit system bids if a position is eventually filled through the "company select" procedure.

9. The Court is mindful that more than one year has passed since Plaintiff commenced this action and that it is deemed "trial ready" for April 1, 1995. From a review of the file herein, there appears to the Court no good reason why the jurisdictional issue resolved herein—which the Defendant raised as an affirmative defense in its Answer—could not have been resolved at an earlier stage in the litigation. Such an earlier resolution would likely have reduced the time and money the parties have expended in conducting full-blown discovery on Plaintiff's claim, as well as any statute of limitations issue which may arise following the dismissal ordered herein.