**Ronald JEFFERLONE, Plaintiff,**

v.

**CANADIAN PACIFIC (U.S.), INC., Canadian Pacific Limited, and Railway Reorganization Estate, Inc. (Formerly Delaware and Hudson Railway Co.), Defendants.**

No. 91–CV–0701C.

United States District Court,
W.D. New York.

May 26, 1995.

Robert J. Reden, Buffalo, NY, for plaintiff.

McNamee, Lochner, Titus & Williams (David J. Wukitsch, of Counsel), Albany, NY, for defendants.

## DECISION AND ORDER

CURTIN, District Judge.

### BACKGROUND

Plaintiff Ronald Jefferlone was an employee of the defendants Canadian Pacific (U.S.), Inc., Canadian Pacific Limited, and Railway Reorganization Estate, Inc., formerly the Delaware and Hudson Railway Company, from 1976 until he was denied the position of trainman/freight conductor in 1990. Item 15 at 2. Plaintiff commenced action in state court, seeking recovery for unlawful employment discrimination based on handicap under the New York Executive Law, Section 296(1)(a) [hereinafter Human Rights Law].

Defendants removed the action to this court on diversity grounds and now move for an Order pursuant to Rule 56(b) of the Federal Rules of Civil Procedure granting summary judgment, on the grounds that: 1) plaintiff's claim for relief under the New York Human Rights Law is preempted by the federal Railway Labor Act ("RLA"); and 2) plaintiff cannot prove a *prima facie* case of disability discrimination under the Human Rights Law. Item 13.

In 1985, the plaintiff, working as a trainman/freight conductor with the Delaware and Hudson Railway Company, lost his right hand and lower arm in a railway accident. Item 20 at 1. In June 1986, he returned to work as a trainmaster, a management position which at times required him to perform the functions of trainman/freight conductor. Item 20 at 2. A co-worker, Mr. Edward Croteau, personally observed plaintiff performing the duties of trainman/freight conductor after plaintiff had lost his right hand and lower arm. Item 17, Exhibit D.

In June 1988, the Delaware and Hudson Company filed under Chapter 11 of the United States Bankruptcy Code. Canadian Pacific took over the operation of the railroad as an emergency service carrier in August 1990, when plaintiff was informed by Mr. Thomas Waver, General Manager for the Delaware and Hudson Railway Co., that his management position was being eliminated. Item 20 at 2.

Management personnel such as the plaintiff have the right, upon elimination of their jobs, to "bump into bargaining unit positions previously held by such managers." Item 5 at 3. As a result, plaintiff applied to "bump" into the trainman/freight conductor position. Item 20 at 2.

Defendants, in accordance with company policy, required plaintiff to undergo a medical examination for the "safety sensitive" position of trainman/freight conductor. Item 15 at 3. A medical examination was performed by Dr. Chintapa Prabarasuth on August 27, 1990, who found plaintiff qualified for the position of trainman/freight conductor. Item 15 at 4. Dr. Prabarasuth's final report was reviewed by Dr. Gabriel Farah, a

medical consultant to Canadian Pacific. Dr. Farah assessed Dr. Prabarasuth's report in light of a job description of the position and determined, without examining the plaintiff himself, that plaintiff could not safely perform the duties of trainman/freight conductor. Dr. Farah also did not order plaintiff to undergo a field test to see whether he could adequately perform the duties of the job, even though the doctor had the authority to do so. Item 20 at 4. A letter dated September 28, 1990, signed by Mr. Waver informed plaintiff that he could not "bump" into the position of trainman/freight conductor. Item 5, Exhibit B.

The trainman/freight conductor positions are bargaining unit positions represented by the United Transportation Union ("Union"), which has a collective bargaining agreement ("CBA") with the defendants. Item 14, Exhibit A. Article 27 of the CBA, entitled "Physical Fitness, Determination of," outlines grievance procedures for employees who are medically disqualified. Relevant sections of Article 27 include:

27.1 (a) When a trainman has been physically disqualified he shall be furnished a copy of the medical report containing the reason for his disqualification.

(b) When a trainman has been physically disqualified and a physician of his choice disputes the medical diagnosis of the Carrier which resulted in the trainman's disqualification, such disqualification may be appealed and a request made for an examination by a neutral physician. ...

(c) The trainman shall be examined by the neutral physician who shall report his findings in writing to the physician designated by the General Chairman and to the Senior Corporate Advisor, Occupational & Environment Health of the Carrier. The findings of the neutral physician shall be final and binding. ...

.    .    .    .    .

(f) The Carrier shall pay its physician and the trainman shall pay the physician he designates ...

Item 14, Exhibit A at 21-2. Plaintiff filed wage claims under the grievance procedure

outlined in Article 29 of the contract for defendants' refusal to allow him to work as a trainman/freight conductor. Upon the advice of Mr. Samuel Nasca, the State Director of the Union, however, he did not challenge Dr. Farah's determination under Article 27. *See* Item 18.

Plaintiff then commenced this action, claiming unlawful employment discrimination based on handicap under the Human Rights Law, which states that it is unlawful discriminatory practice "[f]or an employer ... because of the ... disability ... of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1)(a) (McKinney 1993).

### DISCUSSION

■■■ Defendants have moved for summary judgment on the grounds that plaintiff's claims under the Human Rights Law are preempted by the Railway Labor Act ("RLA") and, in the alternative, that plaintiff has not presented a *prima facie* case required under the Human Rights Law. Defendants must show that there is no genuine issue of material fact in order to be entitled to summary judgment. Fed.R.Civ.P. 56(c). *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A material fact is one "that might affect the outcome of the suit under governing law...." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court must view the evidence in the light most favorable to the non-moving party. *Id.*

### I. Railway Labor Act Preemption

Defendants first argue that the plaintiff cannot be granted relief for his claim under the Human Rights Law because, as a railroad employee, claims against his employer are covered exclusively by the grievance procedures within his collective bargaining agreement, pursuant to the RLA. Defendants maintain that Congress intended the RLA to cover all aspects of railway labor relations. Item 15 at 8. To the extent that

the disability discrimination provisions of the Human Rights Law infringe upon an employer's determination of an employee's fitness for rail service, the purpose of the RLA is undermined. Therefore, the RLA preempts the Human Rights Law. Item 15 at 8–9.

A recent Supreme Court decision has effectively nullified this argument. In *Hawaiian Airlines, Inc. v. Norris,* —— U.S. ——, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994), the Court found that plaintiff's claim that he was discharged in violation of a state's Whistleblower Protection Act was not preempted by RLA, even though it might be necessary to refer to the CBA to determine whether plaintiff was actually discharged. The Court stated that "a state-law cause of action is not pre-empted by the RLA if it involves rights and obligations that exist independent of the collective-bargaining agreement...." *Id.* —— U.S. at ——, 114 S.Ct. at 2247. Furthermore, "the existence of a potential CBA-based remedy [does] not deprive an employee of independent remedies available under state law." *Id.* —— U.S. at ——, 114 S.Ct. at 2248. The Eighth Circuit has confirmed that "*Norris* narrowed the scope of federal preemption under the RLA" (*Taggart v. Trans World Airlines, Inc.,* 40 F.3d 269, 272 (8th Cir.1994)), permitting a plaintiff covered by a RLA contract to maintain a state law claim of discrimination on the basis of handicap because the state law provides workers "with substantive rights independent of the collective bargaining agreement and causes of action to enforce such rights are not pre-empted by the RLA." *Id. See also Westbrook v. Sky Chefs, Inc.,* 35 F.3d 316, 317–18 (7th Cir.1994); *Piper v. Alaska Airlines, Inc.,* 34 F.3d 1073 (9th Cir.1994) (table) (text at 1994 WL 424292, at *4).

Defendants next argue that even if no blanket preemption exists, a federal preemption still operates here because Jefferlone's claim is substantially dependent upon interpretation of the collective bargaining agreement. In *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), the Supreme Court held that:

> [E]ven if dispute resolution pursuant to a collective bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 preemption purposes.

.    .    .    .    .

> [A]n application of state law is preempted ... only if such application *requires* the interpretation of a collective-bargaining agreement.

*Id.* at 409–10, 413, 108 S.Ct. at 1883–84, 1885 (emphasis added). The *Norris* court adopted the *Lingle* standard for RLA preemptions. Therefore, this court must decide whether it is required to interpret the CBA in order to adjudicate plaintiff's claim of handicap discrimination.

Defendants assert that the court would necessarily have to interpret the CBA to determine whether the plaintiff was entitled to "bump" into the trainman/freight conductor position. Since defendants do not concede this right, the plaintiff must show that he was otherwise entitled to the position in order to trigger the disability discrimination claim. *O'Brien v. Consolidated Rail Corp.,* 972 F.2d 1, 5 (1st Cir.1992).

The defendants' statement of facts (Item 13) makes clear that the only aspect of plaintiff's "bumping" right which they dispute is his physical qualification for the job. Article 27 sets forth a mandatory procedure for informing a trainman that he or she has been physically disqualified from a position as well as providing an avenue to appeal such a determination. However, there is no language in the CBA detailing the bases for making the original determination of physical qualification.

Defendants cite *O'Brien v. Consolidated Rail Corp.,* 972 F.2d 1 (1st Cir.1992), a factually similar case in which the Court of Appeals for the First Circuit found RLA preemption of a state law discrimination claim. The plaintiff in *O'Brien* was also denied a position because he was missing his right hand. He filed a grievance under an anti-discrimination provision of his collective bargaining agreement and lost. He then sued in

Federal Court under the Massachusetts law forbidding physical handicap discrimination by employers. The First Circuit found that the plaintiff's claim under the Massachusetts law forbidding physical handicap discrimination by employers was preempted by the RLA, because:

> [A]ddressing the merits of O'Brien's claim of physical handicap discrimination would require us to assess O'Brien's fitness and ability to perform safely the functions of a stevedore. Yet an employee's fitness and ability are governed by the rules and procedures contained in the collective bargaining agreement.... [The state law] requires a court to determine whether the plaintiff is a "qualified handicapped person," but this determination would be impossible to make without reference to the collective bargaining agreement.

972 F.2d at 5. The Sixth and Ninth Circuits have employed similar analyses to find other state disability discrimination laws preempted. *See McCall v. Chesapeake & Ohio Ry. Co.,* 844 F.2d 294 (6th Cir.), *cert. denied,* 488 U.S. 879, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988); *Croston v. Burlington Northern R.R. Co.,* 999 F.2d 381 (9th Cir.1993); *Anderson v. American Airlines, Inc.,* 2 F.3d 590, 596 (5th Cir.1993).

Plaintiff distinguishes *O'Brien* in three ways. He first argues that the facts of his discrimination claim do not clearly fall within Article 27. Mr. Samuel Nasca, the State Director of the United Transportation Union, explained in his affidavit that Article 27 is only triggered when a trainman has been physically disqualified and furnished a copy of the medical report containing the reasons for the disqualification. Item 18. Plaintiff never received a medical report stating that he was physically disqualified. The only written report in his possession was written by Dr. Prabarasuth, the doctor to whom he was sent by the defendants, and that report found him qualified to work. Item 5, Ex. A. In addition, Article 27 applies only when a

medical diagnosis is in dispute. Plaintiff's physical condition, or "diagnosis," is not in controversy. Indeed, Mr. Thomas Waver, the General Manager of the Delaware and Hudson Company, conceded that "Article 27 doesn't deal with qualifications, it deals with medical condition and there's no question [Jefferlone] doesn't have any right forearm and right hand." Item 17, Exhibit F. Therefore, plaintiff argues that, unlike *O'Brien,* he could not have challenged the defendants' decision as a violation of Article 27.[1]

Secondly, the decision to disqualify the plaintiff in *O'Brien* was made after the employer followed the procedures in the contract and tested the plaintiff's ability to perform the work. In contrast, Dr. Farah made a determination that Mr. Jefferlone was not physically qualified without ordering a field test or examining him, apparently basing the decision solely on the handicap at issue.

Thirdly, the plaintiff cites *Taggart v. TWA,* 40 F.3d 269 (8th Cir.1994), for the proposition that the *Norris* decision undermines the reasoning in *O'Brien* and *McCall v. Chesapeake & Ohio Ry. Co.,* 844 F.2d 294 (6th Cir.1988). Item 35. In *Taggart,* the plaintiff had also filed a state law handicap discrimination claim after her employer determined that her medical problems made her permanently unable to perform the duties of a flight attendant. Relying on *McCall,* the District Court found *Taggart's* claim preempted by the RLA because the court would have to make the same determination as a review board—whether the claimant was physically able to perform her job. *Taggart* argued on appeal, as does the plaintiff in this case, that the court could decide whether TWA had discharged her because of a perceived handicap, rather than reasonably accommodating her, without interpreting the CBA. The United States Court of Appeals for the Eighth Circuit agreed, based on its reading of *Norris.* The *Taggart* court acknowledged that:

> physically qualified for the position, are clearly governed by the CBA. Therefore, it does not appear necessary to discuss his status as a bargaining-unit member in order to reach the preemption issue.

---

1. Plaintiff also attempts to argue that, as a management employee, he was not a bargaining-unit member subject to the collective bargaining agreement when he tried to bump into the trainman position. However, plaintiff's bumping rights, as well as the requirement that he be

Unlike retaliatory discharge or race discrimination, "conduct that is not by any construction a subject for collective bargaining and arbitration," *McCall*, 844 F.2d at 302, handicap discrimination involves the employee's physical condition and job performance. The rules and procedures contained in collective bargaining agreements often set certain requirements for physical condition and job performance. Thus, the argument is that, when the collective bargaining agreement establishes such requirements, state law handicap discrimination claims are pre-empted because it is impossible to determine whether the employee is handicapped without interpreting the collective bargaining agreement.

40 F.3d at 274. However, the court reached a different conclusion from *O'Brien* and *McCall* and other courts that had preempted state law handicap discrimination claims because:

> [T]hese cases were decided before *Norris* ... [which] narrowed the scope of RLA pre-emption. Under *Norris*, the "same factual inquiry" and the "arguably justified" tests are no longer grounds for pre-emption and, to the extent these cases rely on those grounds, they have been undermined.... In addition, in ... *O'Brien*, state law was not the "only source" of the employee's claims because the claims depended at least in part on the collective bargaining agreements.

*Id.* at 274–75. The *Taggart* court found that:

> [A]s in *Norris*, the collective bargaining agreement is not the only source of Taggart's right not to be terminated wrongfully.... [T]he fact that Taggart may have a potential remedy based on the collective bargaining agreement does not deprive her of independent remedies available under state law. This is so even where the resolution of the state law claim and the claim under the collective bargaining agreement will involve the "same factual inquiry."

> Nor do we think that resolution of Taggart's state law claim requires a determination whether the termination was justified by the collective bargaining agreement. Such a determination would be re-

quired if Taggart had alleged termination in violation of the collective bargaining agreement. However, in the present case, Taggart asserts that TWA terminated her on the basis of a perceived physical handicap in violation of state law. Under *Norris*, the employer's motive is a purely factual inquiry which does not require interpretation of the collective bargaining agreement.

*Id.* at 274.

Plaintiff contends that this court faces the identical issue as *Taggart*, whether the defendants violated his civil rights by denying him the opportunity to do the work of a trainman/freight conductor. This claim is separate and distinct from any grievance that could be decided by interpreting Article 27, and thus correctly brought under the Human Rights Law. Item 20 at 15.

Defendants disagree that the dispute was not covered by Article 27 and argue that plaintiff's failure to avail himself of the opportunity to dispute his employer's judgment of his physical qualification either through the process delineated in Article 27 or by filing a grievance protesting the determination under the broader grievance provisions of Article 29 should not now give him an additional right to litigate in the court. Defendants maintain that plaintiff's claim grows out of the interpretation of Article 27; thus, the RLA must preempt his right to suit under state law.

■ After considering the arguments and authority from both parties, I do not believe plaintiff should be foreclosed as a matter of law from pursuing his discrimination claim. Defendants rely mainly on pre-*Norris* decisions. *Taggart* made clear that *Norris* significantly limited the RLA preemption of state discrimination claims, even those dealing with handicaps such as the one in question here. I sympathize with the defendants' argument that plaintiff's ability to perform a particular job despite his handicap cannot be determined without reference to occupational qualifications and safety precautions, areas which the RLA entrusts to the railroad industry. However, plaintiff claims that his employer did not evaluate his ability to do

the tasks necessary for the position. Unlike *O'Brien*, he was never given a field test or any other opportunity to show that he was qualified. The doctor to which he was referred by the company reported that he was capable of performing as trainman/freight conductor. These factual allegations, like those in *Taggart*, permit the trier of fact to decide, without interpreting the collective bargaining agreement, whether the company violated state discrimination law in refusing to allow the plaintiff to bump into the position of trainman/freight conductor.

## II. Prima Facie Case

■ Lastly, defendants argue that, even if the RLA does not preempt the plaintiff from remedy under state law, plaintiff has not established a *prima facie* case under the Human Rights Law. Item 15 at 13. To establish a *prima facie* case, plaintiff must show that he suffered an adverse employment action due to his disability. The term "disability" in the Human Rights Law is defined as a "physical, mental or medical impairment ... which do[es] not prevent the complainant from performing in a reasonable manner the activities involved in the job or occupation sought or held." Human Rights Law, § 292, subd. 21 (1993). The Defendants argue that Dr. Farah concluded that plaintiff's handicap would prevent him from performing trainman duties on a regular basis in a reasonably safe manner. As such, plaintiff did not have a "disability" according to the meaning of the term under § 292 of the Human Rights Law, and cannot establish a *prima facie* case.

Plaintiff responds that he has submitted evidence sufficient for a *prima facie* showing that he can perform "in a reasonable manner" the duties of a freight conductor. In addition to his own affidavit in which he asserts that his management position required him from time to time to perform all of the duties of trainman/freight conductor, plaintiff submits an affidavit of a co-worker, Mr. Edward Croteau, who personally observed plaintiff performing those duties, including the coupling and uncoupling of cars, the throwing of switches, the application of hand brakes, handsignals, and aligning

knuckles, after the loss of his right hand and lower arm. Item 17, Exhibit D. Finally, plaintiff points to the report of Dr. Prabarasuth who, after giving plaintiff a medical examination, found him to be qualified for the position of trainman/freight conductor. Dr. Prabarasuth's medical file for plaintiff included job descriptions of the trainman/freight conductor sent to the doctor by Ms. Ellie Scanlon, the defendants' senior claims representative. Item 17 at 2 and Ex. B.

Defendants dispute Dr. Prabarasuth's report finding plaintiff medically qualified for the position, claiming that Dr. Prabarasuth was not qualified herself to perform the examination. Defendants point out that Dr. Prabarasuth was not familiar with the duties of the position, had no training in occupational medicine, and was under the mistaken impression that plaintiff was working as a trainman at the time of the examination. On the other hand, Dr. Farah was trained in occupational medicine and was familiar with the physical requirements of the position. Defendants specifically note the duties such as climbing upon moving cars and lifting up to 83 pounds with both hands as the basis for Dr. Farah's conclusion that plaintiff could not perform all the duties of trainman/freight conductor safely on a regular basis. Item 15 at 14–15.

■ However, defendants cannot show conclusively at this stage of litigation that plaintiff was incapable of performing the duties of a freight conductor in a reasonable manner because no field test was administered. Dr. Farah's conclusion was based solely upon his review of plaintiff's medical report and the job description. Item 20 at 4. Courts have emphasized that the process of determining job qualification must be individualized and specific. "Employment may not be denied based on speculation and mere possibilities, especially when such determination is premised solely on the fact of an applicant's inclusion in a class of persons with a particular disability rather than upon an individualized assessment of the specific individual." *Matter of State Division of Human Rights v. Granelle*, 70 N.Y.2d 100, 517 N.Y.S.2d 715, 718, 510 N.E.2d 799, 802

(1987). "[T]he *particular* disability must be such that it prevents the *particular* individual from performing in a reasonable manner the particular activities involved in the job or occupation." *Matter of Miller v. Ravitch,* 60 N.Y.2d 527, 470 N.Y.S.2d 558, 561, 458 N.E.2d 1235, 1238 (1983) (J. Jasen, concurring) (emphasis in original). Dr. Farah concedes that he was authorized to order a field test in which the plaintiff could have proved himself qualified for the position if he was able to perform the job functions. Farah deposition at 168–70. Accordingly, plaintiff's allegations, coupled with several affidavits supporting his assertion that he was capable of performing the job of trainman/freight conductor, make out a *prima facie* case of discrimination on the basis of his disability.

### CONCLUSION

The motion for summary judgment by defendants Canadian Pacific (U.S.), Inc., Canadian Pacific Limited, and Railway Reorganization Estate, Inc., on the grounds of preemption and failure to state a *prima facie* case of employment is denied.

A telephone conference to set a schedule shall be held on June 12, 1995, at 3 p.m.

So ordered.