_____

No. 95-4042
_____

Benny L. Wheeler,                       *
                                        *
          Appellant,                    *
                                        *       Appeal from the United States
     v.                                 *       District Court for the
                                        *       Eastern District of Missouri.
St. Louis Southwestern  Railway         *
Company; Southern Pacific               *
Transportation Company,                 *
                                        *
          Appellees.                    *

_____

              Submitted:  May 15, 1996

                 Filed:  July 26, 1996
_____

Before FAGG, WOLLMAN, and LOKEN, Circuit Judges.
_____


WOLLMAN, Circuit Judge.


     Benny Wheeler appeals the district court's[1] order dismissing his
claim for severance benefits against St. Louis Southwestern Railway Company
for lack of subject matter jurisdiction.  We affirm.


**I.**


     Benny Wheeler was employed by the St. Louis Southwestern Railway
Company (Railway) as a locomotive engineer and was a member of the
Brotherhood of Locomotive Engineers (BLE), a railroad union that represents
engineers.  Pursuant to a national agreement with the United Transportation
Union (UTU), Wheeler also acquired seniority as a conductor, brakeman, and
switchman.  The UTU is also

_____

     [1]The Honorable Steven Limbaugh, United States District Judge
for the Eastern District of Missouri.

a railroad union that represents employees in train and yard service.[2]

In 1992, Railway developed a severance plan to reduce, on a voluntary basis, employees working as conductors, brakemen, and switchmen. Wheeler retired from active service on July 1, 1992, and applied for a $60,000 buy-out under the severance plan. Railway denied Wheeler's application on the basis that he was not an eligible employee under the plan.

Wheeler appealed the denial of his application to the plan administrator. After the plan administrator denied his claim, Wheeler filed suit in Missouri state court. Railway removed the case to federal court, alleging that the claim was alternatively governed by the Railway Labor Act, 45 U.S.C. §§ 151 et seq. (RLA) and the Employee Retirement Income Security Act, 29 U.S.C. §§ 1140 et seq. (ERISA). The district court denied Wheeler's motion to remand the case to state court. Railway then moved for summary judgment on the ground that the case was preempted by the RLA. The district court found that Wheeler's claim for severance benefits was subject to arbitration under the RLA. Concluding that it lacked subject matter jurisdiction over the dispute, the district court treated Railway's motion for summary judgment as a motion to dismiss and dismissed the action.

## II.

From 1988 through 1991, Railway and the UTU were involved in negotiations between the nation's railroads and the railroad unions involving, inter alia, reduction in crew consist. Crew consist refers to the number of employees necessary to safely operate a train. The parties failed to reach agreement, and in order to

---

[2]Included in this category of employees are conductors, brakemen, and switchmen.

avoid a nationwide strike by the unions, President George Bush appointed Presidential Emergency Board 219 (the Board) to investigate the disputes and make recommendations.  On January 15, 1991, the Board found that the railroads had valid reasons for proposing a reduction in crew consist and recommended that the individual parties negotiate at the local level.

Despite the Board's recommendations, some of the railroads and unions failed to reach agreement.  In response to this failure, Congress enacted Public Law 102-29, which imposed the recommendations submitted by the Board.  Settlement of Railroad Labor-Management Disputes, Pub. L. No. 102-29, 105 Stat. 169 (1991).  In accordance with this legislation, an arbitration panel was appointed to resolve the crew consist dispute between Railway and the UTU.  On December 31, 1991, the panel issued its decision, known as the "Witt Award."[3]  Pursuant to the Witt Award, train and yard service employees would receive a $60,000 buy-out if they voluntarily retired from service by March 31, 1992.  The Witt Award became a congressionally-mandated collective bargaining agreement in response to Public Law 102-29.[4]

### III.

Dismissal for lack of subject matter jurisdiction will not be granted lightly.  Bowe v. Northwest Airlines, Inc., 974 F.2d 101, 103 (8th Cir. 1992), cert. denied, 507 U.S. 992 (1993).  Dismissal is proper, however, when a facial attack on a complaint's alleged basis for subject matter jurisdiction shows there is no basis for jurisdiction.  Id.

---

[3]The Award was named after the panel's chairperson, Helen Witt.

[4]Public Law 102-29 provided that the recommendations of the Board shall be binding on the parties and "shall have the same effect as though arrived at by agreement of the parties under the Railway Labor Act . . . ."  Pub. L. No. 102-29, § 1(3).

The issue is whether Wheeler's claim is preempted by the RLA. In enacting the RLA, Congress attempted "`to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes.'" Taggart v. Trans World Airlines, 40 F.3d 269, 272 (8th Cir. 1994) (quoting Hawaiian Airlines, Inc. v. Norris, 114 S. Ct. 2239, 2243 (1994)). To accomplish this goal, the RLA imposes mandatory arbitration for "minor" disputes. Id. Controversy over the meaning of an existing collective bargaining agreement in a particular fact situation is one example of a "minor" dispute. Taggart, 40 F.3d at 272 (citing Brotherhood of R.R. Trainmen v. Chicago R. & I. R.R., 353 U.S. 30, 33 (1957)). In other words, the RLA preempts "state law claims that involve minor disputes because such disputes are subject to mandatory arbitration." Taggart, 40 F.3d at 272.

Wheeler argues that he is not seeking benefits pursuant to the collectively-bargained Witt Award but rather under Railway's severance plan. He claims that because the severance plan was not drafted pursuant to the Witt Award, it is not a collective bargaining agreement subject to the arbitration provisions of the RLA. He contends that the plan was drafted solely by Railway and was thus not "bargained" for at all. He further argues that the plan itself permits court adjudication of his claim.

We find Wheeler's contentions unpersuasive for several reasons. First, the plan specifically refers to both Public Law 102-29 and the Witt Award.[5] Moreover, the plan simply mirrors the

---

[5]The specific language contained in the Summary Plan Description states:

This program is intended to make available a choice between voluntary separation and dismissal allowance benefits to train and yard service employees in Company service, in accordance with the Crew Consist Arbitration Award dated December 31, 1991 issued pursuant to Public Law No. 102-29.

-4-

provisions set out in the Witt Award. For example, both the plan and the Witt Award provide for a $60,000 buy-out for train and yard service employees who apply for voluntary resignations before March 31, 1992. The plan merely provides in greater detail the procedures employees must follow to apply for severance benefits.

That Railway drafted the plan does not preclude the plan from being a collective bargaining agreement. Collective bargaining agreements take several forms under the RLA. In this case, it is clear that the plan arose as a result of Congress' action in enacting Public Law 102-29 and the subsequent Witt Award. Wheeler's claim for severance benefits is precisely the type of dispute the RLA's arbitration provisions were intended to cover.

We find unpersuasive Wheeler's argument that the Supreme Court's recent decision in Norris lends support to his position that the claim is not preempted by the RLA. In Norris, the Supreme Court held that the RLA does not preempt state law rights that are independent of the collective bargaining agreement. Norris, 114 S. Ct. at 2248-49. In Wheeler's case, however, any severance benefits to which he may be entitled arise solely from the provisions of the plan. Thus, Norris is inapposite. See id. at 2248 ("[W]here the resolution of a state-law claim depends on an interpretation of the collective-bargaining agreement, the claim is preempted."); see also Taggart, 40 F.3d at 273.

Finally, Wheeler argues that the plan itself provides that a claim for denial of benefits may be brought in state or federal court. This language, however, appears in the section of the plan entitled "ERISA Requirements." It is well-recognized that ERISA does not provide an alternative to the RLA. Bowe, 974 F.2d at 103. "Despite [ERISA's] express provision allowing suits over the coverage and application of [employee benefit] plans to be brought in federal court, ERISA was not intended to, nor did it, preempt the mandatory arbitration provisions of Railway Labor Act." Id.

-5-

(internal quotations omitted) (alteration in original).

The order of dismissal is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.