# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 05-4181/06-2287

_____

Jake Pittari,                                    *
                                                 *
                    Appellee,                    *
                                                 *    Appeals from the United States
        v.                                       *    District Court for the
                                                 *    Western District of Arkansas.
American Eagle Airlines, Inc.,                   *
                                                 *
                    Appellant.                   *

_____

Submitted: September 29, 2006
Filed: November 9, 2006

_____

Before RILEY and COLLOTON, Circuit Judges, and KYLE,[1] District Judge.

_____

RILEY, Circuit Judge.

American Eagle Airlines, Inc. (American Eagle), appeals from a jury verdict in favor of Jake Pittari (Pittari) on his claim under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101-12213. American Eagle argues Pittari failed to prove unlawful discrimination and his claim is preempted by the Railway Labor Act (RLA), 45 U.S.C. §§ 151-188. American Eagle also appeals the district court's denial of its motion for post-offer costs, and the district court's award of attorney fees and costs to Pittari. Following our thorough review of the record, we vacate the jury's

_____

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota, sitting by designation.

verdict, and we reverse the district court's award of attorney fees and costs to Pittari and its denial of post-offer costs to American Eagle. We remand to the district court to determine the amount of American Eagle's post-offer costs.

## I. BACKGROUND

### A. Factual Background

American Eagle, a commercial airline carrier regulated by the Federal Aviation Administration (FAA) and the Department of Transportation (DOT), employs Pittari as a flight attendant. Because flight attendants are responsible for the safety of airline passengers and must think clearly and quickly in emergency situations, the FAA classifies this position as a "safety sensitive position." A safety sensitive position features job functions that may impact the safety of the public, an employee's co-workers, or the employee. The essential functions of a flight attendant position include being able to: handle and provide effective leadership in emergency situations; assess situations quickly; deal with disorderly, sick, or injured passengers; determine whether to initiate emergency procedures; memorize the location of emergency equipment; methodically apply emergency procedures; and evacuate passengers from an aircraft rapidly.

In June 2002, Pittari informed American Eagle's Medical Department (Medical) by letter he was taking the medication Neurontin. Dr. Rosalyn B. Beaty (Dr. Beaty), a Medical staff physician, acknowledged receiving Pittari's letter, but took no action to prohibit Pittari from working as a flight attendant.

In April 2003, Pittari submitted a request for intermittent leave under the Family and Medical Leave Act (FMLA) to obtain treatment for depression and anxiety. American Eagle policy mandates disclosure of all medications taken by employees in order for Medical to determine whether a flight attendant is fit for duty. In compliance with this policy, Dr. William McCollum (Dr. McCollum), Pittari's physician, informed American Eagle of Pittari's medications, which included

Neurontin, Baclofen, and Provigil. Medical became concerned these medications, specifically Neurontin and Baclofen, could impair Pittari's cognitive ability to perform the safety-sensitive duties of Pittari's position as a flight attendant.

Based on its concerns about Pittari's possible cognitive impairment, American Eagle arranged for Pittari to take a MicroCog screening test[2] (MicroCog) on June 5, 2003. Dr. Anne-Marie Moreault (Dr. Moreault), an independent psychologist, reviewed Pittari's computer-generated MicroCog results. In Dr. Moreault's opinion, the test indicated a below-average ability to think, process information, and reason generally and abstractly. Additionally, the test revealed stress, fatigue, or anxiousness might further compromise Pittari's reaction time. Dr. Moreault also concluded Pittari's problem-solving skills might prove challenging, particularly during emergency situations.

On June 11, 2003, after reviewing Pittari's MicroCog results, Medical placed Pittari on temporary work restriction from safety-sensitive duties. Both Dr. McCollum and Pittari agreed, as of June 19, 2003, based upon the MicroCog results, American Eagle had legitimate concerns about allowing Pittari to work as a flight attendant. Pittari understood if his cognitive abilities improved, American Eagle would return him to his former position. Despite being restricted from working as a flight attendant, Pittari was capable of performing other roles, such as gate agent, ticket agent, and baggage handler, or other duties, such as directing passengers in need of assistance, or performing administrative or secretarial computer work. However, Pittari never worked in these capacities.

---

[2]A MicroCog is administered via computer to the testee and measures the testee's cognitive functions, such as attention, mental control, reasoning, response time, and information processing speed and accuracy. American Eagle requires flight attendants who are taking certain medications or who present concerns regarding their cognitive abilities to take a MicroCog.

On July 21, 2003, Dr. McCollum notified American Eagle by letter he had changed Pittari's medications and Pittari was ready to be retested. On July 29, 2003, Pittari took a second MicroCog, the results of which indicated little or no change from the initial test. After the second MicroCog, Dr. Moreault recommended a more complete assessment to ensure Pittari could work as a flight attendant. On August 27 and 28, 2003, Pittari underwent a neuropsychological evaluation, performed by Dr. Gene Chambers (Dr. Chambers). On October 6, 2003, at Pittari's request, Dr. Chambers sent Medical a letter stating although Pittari suffered a cognitive impairment that was the result of a closed-head trauma Pittari incurred while working for American Eagle, Pittari currently had the mental capacity to perform as a flight attendant, particularly because he had performed the job repetitively in the past. However, because Medical was still concerned about Pittari's response to potential unique emergency situations (rather than repetitive functions), Medical maintained Pittari's job restrictions and requested a copy of Dr. Chambers's neuropsychological assessment of Pittari.

On October 31, 2003, Medical received Dr. Chambers's report, which indicated Pittari had a mild to moderate range of impairment, resulting in low processing speed and problem-solving deficits, as well as impaired mental flexibility, judgment, and mental efficiency. Medical did not believe the report's assessment and recommendations correlated with Dr. Chambers's earlier letter, and therefore declined to remove Pittari's work restriction.

In December 2003, in accordance with the collective bargaining agreement between American Eagle and the Association of Flight Attendants, Pittari requested a binding third-party medical evaluation. On January 21 and 30, 2004, Dr. Ronald E. McInroe (Dr. McInroe), a clinical neuropsychologist, evaluated Pittari and concluded Pittari was fit for duty as a flight attendant. In Dr. McInroe's opinion, Pittari's cognitive function had improved since Dr. Chambers's evaluation. Dr. McInroe concluded either Pittari's medications were controlling his condition or Pittari no

longer needed the medications. In a letter dated February 18, 2004, Dr. McInroe opined Pittari was able to perform the essential functions of a flight attendant and he was fit for duty as of January 30, 2004. Medical released Pittari to return to work as a flight attendant on February 20, 2004, after receiving Dr. McInroe's report and letter.

### B.    Procedural Background

In August 2004, Pittari brought suit against American Eagle, alleging violations of the Arkansas Civil Rights Act of 1993 (ACRA), Ark. Code Ann. §§ 16-123-101 to 16-123-108; the ADA, 42 U.S.C. §§ 12101 to 12213; and the FMLA, 29 U.S.C. §§ 2601 to 2654. After American Eagle moved for summary judgment on all of Pittari's claims, Pittari conceded his ACRA claim should be dismissed. With regard to Pittari's remaining claims, the district court denied American Eagle's summary judgment motion.

Approximately four months before trial, American Eagle made an offer of judgment pursuant to Federal Rule of Civil Procedure 68 in the amount of $5,497.50, inclusive of prejudgment interest, attorney fees, and costs. Pittari did not accept the offer of judgment.

Following a jury trial, the jury returned a verdict in Pittari's favor on the ADA claim and in American Eagle's favor on the FMLA claim. The jury awarded Pittari $2,000 in actual damages and $1 in compensatory damages. After the district court entered judgment on the jury's verdict, Pittari moved to recover his attorney fees and costs, and American Eagle filed an application for costs under Rule 68. The district court denied American Eagle's application and granted Pittari's motion, awarding Pittari $24,000 in attorney fees and $5,906.06 in costs, including $3,000 in expert witness fees. This appeal followed.

## II. DISCUSSION

### A. Preemption of ADA Claim

American Eagle first contends Pittari's ADA claim should have been dismissed for lack of subject matter jurisdiction because the claim is preempted by the RLA. A decision on preemption of federal law under the RLA is a question of subject matter jurisdiction, see Bloemer v. Nw. Airlines, Inc., 401 F.3d 935, 938-39 (8th Cir. 2005), which this court reviews de novo, see Jenisio v. Ozark Airlines, Inc. Retirement Plan, 187 F.3d 970, 972 (8th Cir. 1999).

To promote stability in labor-management relations, Congress passed the RLA, which establishes a mandatory arbitral regime for "minor" disputes. 45 U.S.C. § 184; Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 252 (1994). Minor disputes are "controversies arising out of the application or interpretation of the collective bargaining agreement, and therefore, complete preemption applies to disputes involving duties and rights created or defined by the collective bargaining agreement." Gore v. Trans World Airlines, 210 F.3d 944, 949 (8th Cir. 2000). "Courts can resolve questions of federal . . . law involving labor claims only if the issues do not require the court to construe the collective bargaining agreement." Deneen v. Nw. Airlines, Inc., 132 F.3d 431, 439 (8th Cir. 1998) (citing Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 411 (1988)).

In support of its preemption argument, American Eagle contends the collective bargaining agreement between American Eagle and the Association of Flight Attendants sets forth standards and procedures for determining whether a flight attendant should be removed from flying status due to an impairment. It further argues Pittari's ADA claim is dependent on an interpretation of the collective bargaining agreement and thus preempted by the RLA.

The district court rejected American Eagle's preemption argument, concluding Pittari's ADA claim arises independent of the collective bargaining agreement and

derives from federal law. We agree. By asserting an ADA discrimination claim, Pittari seeks to enforce a federal statutory right, not a contractual right embodied in the collective bargaining agreement. See, e.g., Fenney v. Dakota, Minn. & E. R.R. Co., 327 F.3d 707, 718 (8th Cir. 2003); Benson v. Nw. Airlines, Inc., 62 F.3d 1108, 1115 (8th Cir. 1995). Indeed, Pittari's ADA claim can be resolved without any reference to the collective bargaining agreement. "The ADA provides a more extensive and broader ground for relief, specifically oriented towards the elimination of discriminatory employment practices, and, thus, is not preempted by the [RLA]." Fenney, 327 F.3d at 718 (internal quotation omitted). Because federal law, not the collective bargaining agreement, is the source of Pittari's discrimination claim, the RLA does not preempt the claim. See Deneen, 132 F.3d at 439.

### B.    Motion for Judgment as a Matter of Law on ADA Claim

American Eagle asserts the district court erred by denying its motion for judgment as a matter of law, arguing Pittari failed to offer sufficient evidence showing American Eagle regarded Pittari as disabled. We review de novo the district court's denial of a motion for judgment as a matter of law, viewing the evidence in the light most favorable to Pittari, the prevailing party. See Knutson v. Ag Processing, Inc., 394 F.3d 1047, 1050 (8th Cir. 2005) (citation omitted). In doing so, we examine whether sufficient evidence exists to support the jury's verdict. Ollie v. Titan Tire Corp., 336 F.3d 680, 685 (8th Cir. 2003) (citation omitted). We will uphold the jury's verdict unless we conclude a reasonable jury could not have found for Pittari. See Knutson, 394 F.3d at 1050 (citation omitted).

The ADA prohibits discrimination "against a qualified individual with a disability." 42 U.S.C. § 12112(a). To establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate (1) his condition qualifies as a disability within the meaning of the ADA; (2) he is qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) he has suffered an adverse employment action due to his disability. Samuels v. Ks. City Mo. Sch. Dist.,

437 F.3d 797, 801 (8th Cir. 2006) (citation omitted). Being "regarded as" having a physical or mental impairment that substantially limits one or more of an individual's major life activities qualifies as a disability under the ADA. 42 U.S.C. § 12102(2)(C). The Supreme Court has defined two ways in which an individual may fall within this statutory definition: (1) the employer mistakenly believes the individual has an impairment that substantially limits one or more major life activities, or (2) the employer mistakenly believes an actual, non-limiting impairment substantially limits one or more of the individual's major life activities. Sutton v. United Air Lines, Inc., 527 U.S. 471, 489 (1999). The case at bar presents the second scenario: whether American Eagle believed Pittari had a substantially limiting impairment when, in fact, the impairment was not so limiting.

As an initial matter, Pittari contends the major life activity for the jury's consideration was his "cognitive abilities," arguing the district court instructed the jury to consider "whether American Eagle unlawfully discriminated against Pittari because of an alleged defect in his cognitive skills." Such an argument is wholly contradicted by a reading of Pittari's complaint[3] and the jury instructions,[4] both of which indicate the major life activity for the jury's consideration was "working." Pittari's argument on this point mistakenly conflates the major life activity at issue

---

[3]Pittari's complaint alleged American Eagle withheld Pittari from duty based on American Eagle's "stereotypical attitude that [Pittari] would be unable to discharge his duties as a flight attendant because of his physical and mental impairments."

[4]Jury Instruction Number 10 stated the first element of Pittari's prima facie case on the ADA claim was whether American Eagle regarded Pittari's "alleged cognitive impairment as substantially limiting [Pittari's] ability to work." Similarly, Jury Instruction Number 12 stated several factors for the jury to consider in "determining whether [Pittari's] impairment substantially limits [his] ability to work." Finally, Jury Instruction Number 13 informed the jury "the inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working."

with the impairment he suffered. We therefore consider whether American Eagle regarded Pittari as disabled in the major life activity of working.[5]

"[F]inding a plaintiff is substantially limited in working requires a showing that his overall employment opportunities are limited." Breitkreutz v. Cambrex Charles City, Inc., 450 F.3d 780, 784 (8th Cir. 2006) (internal quotation omitted). "[T]he statutory phrase 'substantially limits' requires, at a minimum, [Pittari show he is] unable to work in a broad class of jobs." Sutton, 527 U.S. at 491. "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. §1630.2(j)(3)(i); e.g., Murphy v. United Parcel Serv., Inc., 527 U.S. 516, 523 (1999) ("[T]o be regarded as substantially limited in the major life activity of working, one must be regarded as precluded from more than a particular job."). Instead, Pittari must show, in light of his expertise, background, and job expectations, he has suffered a significant reduction in meaningful employment opportunities due to his impairment. See Cooper v. Olin Corp., Winchester Div., 246 F.3d 1083, 1089 (8th Cir. 2001).

Pittari failed to meet this burden. "An impairment that disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one." Wooten v. Farmland Foods, 58 F.3d 382, 386 (8th Cir. 1995) (quotation omitted). Although American Eagle restricted Pittari from performing safety-sensitive duties, Pittari admitted he could have worked in other capacities with American Eagle. Pittari testified at trial he could have performed the role of a gate agent, ticket agent, or

---

[5]Although the Supreme Court has reserved judgment on and questioned whether working is properly considered a "major life activity" under the ADA, see Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 200 (2002), and Sutton, 527 U.S. at 492, our court on occasion has considered it so, see Nuzum v. Ozark Auto. Distrib., Inc., 432 F.3d 839, 844 (8th Cir. 2005). Given our precedent as well as the parties' acceptance that the term "major life activity" includes working, this court assumes, without deciding, working falls within this definition.

baggage handler, or could have performed other duties, such as directing passengers who needed assistance, or performing administrative or secretarial computer work. Such evidence refutes Pittari's assertion he suffered a significant reduction in meaningful employment opportunities. If American Eagle regarded Pittari as temporarily unable to perform "one particular job," no violation of the ADA occurred. See Wenzel v. Mo.-Am. Water Co., 404 F.3d 1038, 1041 (8th Cir. 2005).

As an additional basis for overturning the jury's verdict, we find the evidence demonstrates American Eagle did not regard Pittari's impairment as substantially limiting. "In determining whether a person is substantially limited in a major life activity, we consider (1) the nature and severity of the impairment, (2) its duration or anticipated duration, and (3) its actual or expected long-term impact." Samuels, 437 F.3d at 802 (citation omitted); see, e.g., 29 C.F.R. § 1630.2(j)(2)(i)–(iii). Under the ADA, a temporary impairment with little or no long-term impact does not constitute a disability. 29 C.F.R. § 1630.2(j)(2)(ii)–(iii). Rather, "[t]he impairment's impact must . . . be permanent or long term." Williams, 534 U.S. at 198.

Guided by these considerations, we note Pittari agreed Medical had legitimate concerns about Pittari's cognitive functions based upon the first MicroCog test results. Pittari understood his cognitive functions could be reevaluated if his medications or medical condition changed. Indeed, Medical allowed Pittari to take another MicroCog after Medical was notified Dr. McCollum had altered Pittari's medications. Pittari also recognized a successful neuropsychological exam would enable him to return to his flight attendant position. A review of Medical's documentation of Pittari's restriction indicates Medical deemed the restriction only temporary in nature. While Pittari disputes whether American Eagle or Medical ever explicitly informed him the restrictions were merely temporary, our review of the record convinces us American Eagle did not regard Pittari's impairment as more than a temporary condition. Pittari offers no evidence to the contrary.

Furthermore, we repeatedly have recognized "the provision addressing perceived disabilities is intended to combat the effects of archaic attitudes, erroneous perceptions, and myths that work to the disadvantage of persons with or regarded as having disabilities." Breitkreutz, 450 F.3d at 784 (quoting Brunko v. Mercy Hosp., 260 F.3d 939, 942 (8th Cir. 2001)); see, e.g., Wooten, 58 F.3d at 385 (citing Sch. Bd. of Nassau County, Fl. v. Arline, 480 U.S. 273, 279, 285 (1987)). Restrictions based upon the recommendations of physicians are not based upon myths or stereotypes about the disabled and thus do not demonstrate a perception of disability. Breitkreutz, 450 F.3d at 784. In this case, the decision to temporarily restrict Pittari from safety-sensitive duties was based upon the results of two MicroCog screening tests and upon the recommendations of Dr. Moreault, the independent psychologist who interpreted Pittari's MicroCogs.

On the record before us, there is insufficient evidence to indicate American Eagle regarded Pittari as disabled in the major life activity of working. We therefore reverse the district court's denial of American Eagle's motion for judgment as a matter of law.

### C. Recovery of Fees and Costs

American Eagle next argues the district court abused its discretion by awarding Pittari his attorney fees and costs, see Salitros v. Chrysler Corp., 306 F.3d 562, 576 (8th Cir. 2002) (stating standard of review is abuse of discretion), and erred by refusing to award American Eagle its own post-offer costs pursuant to Rule 68, see Perkins v. U.S. W. Comm., 138 F.3d 336, 338 (8th Cir. 1998) (stating standard of review is de novo). Because we reverse the district court's denial of American Eagle's motion for judgment as a matter of law, the basis for the district court's ruling on these issues no longer exists. We therefore reverse the district court's order awarding Pittari recovery of his fees and costs and denying American Eagle its post-offer costs.

First, with regard to Pittari's recovery of attorney fees and expert witness fees, under our holding today, Pittari is no longer the prevailing party. Thus, he cannot recover his fees or costs under the ADA. See 42 U.S.C. § 12205 (permitting the court, in its discretion, to award attorney fees, litigation expenses, and costs to the prevailing party).

Second, American Eagle is entitled to its post-offer costs pursuant to Rule 68. Under Rule 68, if a plaintiff rejects a defendant's offer of judgment, and if the judgment finally obtained by the plaintiff is not more favorable than the offer, the plaintiff must pay the costs incurred by the defendant after the offer was made. Perkins, 138 F.3d at 338; see, e.g., O'Brien v. City of Greers Ferry, 873 F.2d 1115, 1120 (8th Cir. 1989) (holding "a plaintiff who refuses an offer of judgment under Rule 68 and later fails to receive a more favorable judgment must pay the defendant's post-offer costs"). Before trial, American Eagle made Pittari an offer of judgment in the amount of $5,497.50, which Pittari did not accept. Under Rule 68, because Pittari rejected American Eagle's offer of judgment and failed to receive a more favorable judgment, Pittari must now pay American Eagle's post-offer costs. Because the district court is in a better position to calculate American Eagle's post-offer costs, we remand this matter to the district court to determine the amount of American Eagle's recovery.

## III.   CONCLUSION

Because Pittari did not meet his burden of showing that American Eagle regarded Pittari as disabled in the major life activity of working, we reverse the district court's denial of American Eagle's motion for judgment as a matter of law. We also reverse the district court's award of attorney fees and costs to Pittari and its denial of post-offer costs to American Eagle. We therefore remand this matter to the district court to determine the amount of American Eagle's post-offer costs and to enter judgment in accordance with this opinion.

_____

-12-