Caleb R. **STURGE**, Plaintiff,

v.

**NORTHWEST AIRLINES, INC.**, Defendant.

**Civil No. 05–1665 (DSD/SRN).**

United States District Court, D. Minnesota.

March 2, 2009.

---

Richard T. Wylie, Esq., Minneapolis, MN, for plaintiff.

Timothy R. Thornton, Esq., Molly M. Borg, Esq., Timothy G. Gelinske, Esq. and Briggs & Morgan, Minneapolis, MN, for defendant.

## ORDER

DAVID S. DOTY, District Judge.

This matter is before the court upon plaintiff Caleb R. Sturge's ("Sturge") objection to the December 19, 2008, report and recommendation of Magistrate Judge Susan R. Nelson. In her report, the magistrate judge recommends that defendant Northwest Airlines, Inc.'s ("Northwest") motion to dismiss for lack of subject matter jurisdiction be granted. The court sustains Sturge's objection for the following reasons.

## BACKGROUND

This dispute arises out of Sturge's October 31, 2003, termination as a Northwest pilot. Sturge began working for Northwest in February 1989 pursuant to the terms of a collective bargaining agreement

("CBA") negotiated by the Air Line Pilots Association, the exclusive bargaining representative of Northwest pilots. The CBA adopted the Northwest Airlines Pension Plan for Pilot Employees ("Plan").[1]

The CBA provides for a System Board of Adjustment ("Board") to adjust and decide disputes "between any employee covered by [the CBA] and [Northwest] growing out of grievances or out of interpretation or application of any of the terms of [the CBA]." (Borg Aff. Ex. B § 21.) Similarly, the Plan establishes a Retirement Board to hear "all disputes arising out of the application and interpretation of the Plan." (*Id.* Ex. C § 7.3.)

The Plan provides full medical disability retirement benefits to qualifying pilots with fifteen years of service and partial benefits to those with less than fifteen years of service. (Compl. ¶¶ 6, 7.) Pursuant to the CBA, a pilot that retires, resigns or is discharged for just cause forfeits his seniority rights. A pilot receiving a disability retirement pension under the Plan, however, retains and accrues seniority for seven years following his disability retirement date and can return to service if his condition improves. (Borg Aff. Ex. B § 22(D).) In addition, Northwest maintains policies granting flight pass privileges and benefits to pilots on medical disability and their qualifying family members. (Compl. ¶ 8.)

On July 17, 2003, Northwest granted Sturge a paid leave of absence because of disabling back problems. In September or October 2003, Sturge applied for disability benefits under the Plan. (*Id.* ¶ 13; Pl. Opp'n Mem. at 3 n.3.) Before ruling on

Sturge's application, Northwest terminated him on October 31, 2003, for possessing and using marijuana. After exhausting Northwest's internal procedures, Sturge grieved his termination to the Board. (Borg Aff. Ex. A.) Sturge admitted his marijuana use before the Board but argued that he was entitled to a "safe harbor" in the Northwest Airlines' Pilots Assistance Program ("NAPAP"). The Board determined that "the NAPAP 'safe harbor' is available to pilots who are reported or self-report [their chemical dependency] pre-duty and who do not have an active investigation or grievance pending concerning a violation of NWA work rules on the use of or possession of marijuana." (*Id.* Ex. A at 14.) On October 5, 2004, the Board found that Northwest properly terminated Sturge under the CBA because he did not timely report his chemical dependency to Northwest management. (*Id.* Ex. A at 15.) On November 22, 2004, Northwest granted Sturge partial disability retirement benefits effective as of October 31, 2003. (Compl. ¶ 15.) The benefits did not include full retirement income, certain flight pass privileges, full health insurance, maintenance of seniority or the right to return to work if Sturge's medical condition improved. (*Id.*)

Sturge brought this action on August 3, 2005,[2] claiming that Northwest terminated him in retaliation for seeking Plan benefits and to prevent him from receiving future benefits in violation of ERISA § 510, 29 U.S.C. § 1140. The magistrate judge recommends dismissing the action for lack of subject matter jurisdiction, and Sturge objects.[3] (R & R at 14–17.)

---

1. The Plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.

2. The case was administratively terminated on September 27, 2005, because of Northwest's then pending bankruptcy proceedings. The court reopened the case on May 28, 2008.

3. Sturge does not object to the magistrate judge's recommendation that his motion to convert Northwest's motion for lack of subject matter jurisdiction into a motion for summary judgment be denied. Accordingly, the court adopts that recommendation.

## DISCUSSION

### I. Standard of Review

The court reviews the report and recommendation of the magistrate judge de novo. *See* 28 U.S.C. § 636(b)(1)(C). "Dismissal for lack of subject matter jurisdiction will not be granted lightly." *Wheeler v. St. Louis Sw. Ry.,* 90 F.3d 327, 329 (8th Cir.1996) (citation omitted). "Dismissal is proper, however, when a facial attack on a complaint's alleged basis for subject matter jurisdiction shows there is no basis for jurisdiction."[4] *Id.*

### II. Preclusion

■ The sole issue presented by Sturge's objection is whether the Railway Labor Act ("RLA") divests the court of subject matter jurisdiction over his ERISA claim. *See Pittari v. Am. Eagle Airlines, Inc.,* 468 F.3d 1056, 1060 (8th Cir.2006) (no subject matter jurisdiction over claims precluded by the RLA). The RLA requires airlines to establish a system for arbitrating "minor" disputes before an adjustment board. *Pittari,* 468 F.3d at 1060 (citing 45 U.S.C. § 184; *Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, 252, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994)). Minor disputes grow out of "the interpretation or application of collective bargaining agreements concerning rates of pay, rules, or working conditions," and are subject to the adjustment board's "mandatory, exclusive, and comprehensive jurisdiction." *Hastings v. Wilson,* 516 F.3d 1055, 1059 (8th Cir.2008) (quotation omitted). The adjustment board's jurisdiction applies to disputes arising out of a pension plan if the plan is maintained by a collective bargaining agreement. *Id.* (citing *Jenisio v. Ozark Airlines, Inc. Ret. Plan for Agent & Cleri-*

cal *Employees,* 187 F.3d 970, 973 (8th Cir. 1999)). Therefore, the RLA precludes certain ERISA claims. *See id.* at 1060 (breach of fiduciary duty); *Jenisio,* 187 F.3d at 974 (benefits dispute). A court, however, retains jurisdiction over ERISA claims that are "independent of an interpretation or application of any collective bargaining agreements, even if the pension plan is created or maintained pursuant to a collective bargaining agreement." *Hastings,* 516 F.3d at 1059.

■ Here, the parties agree that the Plan is subject to the RLA but dispute whether Sturge's ERISA claim is independent of the CBA and Plan. To determine whether a claim is independent of a collective bargaining agreement, a court first considers whether the alleged right derives from a source extrinsic to the collective bargaining agreement itself. *See Pittari,* 468 F.3d at 1060–61; *Deneen v. Nw. Airlines, Inc.,* 132 F.3d 431, 439 (8th Cir. 1998). If so, the claim is not precluded unless enforcement of that right is "inextricably intertwined" with the consideration of the collective bargaining agreement. *See Bloemer v. Nw. Airlines, Inc.,* 401 F.3d 935, 938 (8th Cir.2005); *Thomas v. Union Pac. R.R. Co.,* 308 F.3d 891, 893 (8th Cir.2002). "Mere reference to a collective bargaining agreement" does not result in preclusion. *Thomas,* 308 F.3d at 893 (citing *Norris,* 512 U.S. at 261 n. 8, 114 S.Ct. 2239). Moreover, the RLA generally does not preclude or preempt employment discrimination and retaliation claims. *See, e.g., Norris,* 512 U.S. at 266, 114 S.Ct. 2239 (no preemption of state wrongful discharge and whistleblower claims); *Pittari,* 468 F.3d at 1061 (no preclusion of Americans with Disabilities Act ("ADA") claim);

---

4. Northwest has presented and the court has considered matters outside of the complaint. The magistrate judge, however, determined that Northwest's challenge to subject matter jurisdiction is properly characterized as a fa- cial challenge because the parties' submissions present no disputed factual issues. (R & R at 6.) The court agrees, and neither party objects.

*Thomas,* 308 F.3d at 893 (no preemption of state discriminatory refusal to rehire claim); *Deneen,* 132 F.3d at 439 (no preclusion or preemption of pregnancy discrimination claims); *Benson v. Nw. Airlines, Inc.,* 62 F.3d 1108, 1115 (8th Cir. 1995) (no preclusion of ADA claim); *Taggart v. Trans World Airlines, Inc.,* 40 F.3d 269, 275 (8th Cir.1994) (no preemption of state disability discrimination claim); *Gilmore v. Nw. Airlines, Inc.,* 504 F.Supp.2d 649, 658 (D.Minn.2007) (no preclusion of Family Medical Leave Act claim); *Ludwig v. Nw. Airlines, Inc.,* 98 F.Supp.2d 1057, 1068–69 (D.Minn.2000) (no preemption or preclusion of retaliation claims), *aff'd,* 1 Fed.Appx. 558 (8th Cir.2001); *Carpenter v. Nw. Airlines, Inc.,* Civ. No. 00–2490, 2001 WL 1631445, at *3, 2001 U.S. Dist. LEXIS 24622, at *9 (D.Minn. June 7, 2001) (no preclusion of Title VII claims). *But see Schiltz v. Burlington N.R.R.,* 115 F.3d 1407, 1415 (8th Cir.1997) (Age Discrimination in Employment Act claim precluded because interpretation of seniority rights in collective bargaining agreement required).

In this case, Sturge does not challenge the Board's conclusion that he was terminated for just cause because he was not entitled to the NAPAP's safe harbor. Rather, Sturge maintains that even if his termination was valid under the CBA it still violated § 510 of ERISA. Therefore, the source of Sturge's right is independent of the CBA and Plan, and the only issue is whether enforcement of that right is inextricably intertwined with the Plan and CBA.

■■■ Section 510 of ERISA forbids an employer from discharging a participant in an employee benefits plan for exercising a right under the plan or "for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. A plaintiff asserting a claim under § 510 must first establish a prima facie case pursuant to the familiar *McDonnell Douglas* burden-shifting analysis. *See Curby v. Solutia, Inc.,* 351 F.3d 868, 871 (8th Cir.2003) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). A plaintiff establishes a prima facie case of retaliation or interference with prospective benefits under § 510 by showing that (1) he participated in a protected activity or was likely to receive future benefits, (2) he suffered an adverse employment action, and (3) there is a causal connection between the two events. *Curby,* 351 F.3d at 871 (retaliation); *Fischer v. Andersen Corp.,* 483 F.3d 553, 556 (8th Cir.2007) (interference). In addition, a plaintiff must establish that a "motivating factor" in his discharge was his employer's specific intent to interfere with his plan benefits. *Koons v. Aventis Pharms., Inc.,* 367 F.3d 768, 777 (8th Cir.2004); *see also Fitzgerald v. Action, Inc.,* 521 F.3d 867, 871 (8th Cir.2008) (citation omitted). A reasonable claim for benefits is a protected activity. *Curby,* 351 F.3d at 871.

Northwest first argues that a determination of the reasonableness of Sturge's application for partial disability benefits and his likelihood of receiving full future retirement benefits requires interpretation of the Plan. Northwest, however, granted Sturge's application for partial benefits and does not dispute that he would have qualified for full benefits if he had not been terminated for cause. Therefore, determining whether Sturge reasonably applied for benefits or was likely to receive future benefits requires mere reference to the Plan.[5]

---

5. Northwest insists that resolution of Sturge's ERISA claim involves disputed interpretations of his right to pass privileges and his ability to return to work that are at issue in a separate proceeding in this district. *See Sturge v. Nw. Airlines, Inc.,* Civ. No. 07–499,

Northwest further maintains that an inquiry into its specific intent is not independent of the CBA and Plan. Sturge indicates that he will establish specific intent by showing that other similarly situated pilots were provided access to NAPAP's safe harbor and not discharged. Determining whether Sturge was similarly situated to other pilots will require reference to the CBA and Plan. It will not, however, require resolution of disputed CBA and Plan provisions. Instead, the disputed issues will require fact-based inquiries into other chemically dependent pilots, reports of their dependency and Northwest's response. Such inquiries are not inextricably intertwined with consideration of the CBA and Plan, and the RLA does not preclude Sturge's § 510 claim. *See Thomas*, 308 F.3d at 893 ("Claims that revolve around the conduct or motive of the parties generally are not preempted because they do not require interpretation of the collective bargaining agreement."); *Taggart*, 40 F.3d at 274 ("Under *Norris* the employer's motive is a purely factual inquiry which does not require interpretation of the collective bargaining agreement."); *see also Carmona v. Sw. Airlines Co.*, 536 F.3d 344, 350 (5th Cir.2008) (claim based on disparate treatment allegation not precluded because defendant identified no "CBA provision in dispute or in need of interpretation to adjudicate [the plaintiff's] claims"). Accordingly, the court has subject matter jurisdiction over this action.

## CONCLUSION

Based on the above, **IT IS HEREBY ORDERED** that:

1. Sturge's objection [Doc. No. 36] to the magistrate judge's report and recommendation [Doc. No. 35] is sustained;

2. Northwest's motion to dismiss for lack of subject matter jurisdiction [Doc. No. 14] is denied; and

3. Sturge's motion to convert Northwest's motion to dismiss into a motion for summary judgment [Doc. No. 30] is denied.

2008 WL 835676, 2008 U.S. Dist. LEXIS 25112 (D.Minn. Mar. 27, 2008). The relevant inquiry in this case, however, is not whether Sturge is presently eligible for those benefits, but rather whether he would have qualified for them if he had not been discharged.