# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-1068
_____

Samantha Howard

*Plaintiff - Appellee*

v.

City of Sedalia, Missouri, doing business as Bothwell Regional Health Center

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City
_____

Submitted: November 15, 2023
Filed: June 4, 2024
_____

Before LOKEN, ERICKSON, and GRASZ, Circuit Judges.
_____

LOKEN, Circuit Judge.

Samantha Howard is a pharmacist who has suffered from Type I diabetes since infancy. While attending pharmacy school, she was diagnosed with hypoglycemic unawareness, which prevents her from knowing when her blood sugar has dropped to a dangerously low level. In March 2019, after graduating, Howard began working as a pharmacist at Bothwell Regional Medical Center (Bothwell), a facility operated by the City of Sedalia, Missouri. Howard told her supervisor, Brad Nicholson, that

she has diabetes; he granted her request to keep food and drink at her desk while working alone. She did not inform Bothwell that she was on a waiting list for a diabetic-alert service dog that can detect an impending blood sugar drop to help a diabetic prevent and mitigate hypoglycemic emergencies.

In early June 2020, Howard was told a service dog ("Corry") would be available in August. She told Nicholson and Bothwell's Director of Human Resources and Support Services that she would need the dog by her side constantly for six months to train the dog; after that, she could go to work without the dog.[1] She requested being allowed to bring the service dog into the main pharmacy, but not the sterile "clean room" or the "anteroom," where employees prepare for clean room activities. Bothwell, with no prior employee request for a service animal accommodation, assembled a team of managers and medical staff to analyze Howard's request; each member concluded that the presence of a service dog in the pharmacy was a risk to the safety of Bothwell's patients and should not be allowed.

In August, Bothwell emailed Howard that her request to bring a service animal into only certain areas of the pharmacy was denied because "such an action would not resolve the potential risks of contamination," but that Bothwell intended to work with Howard to find a different accommodation. When the parties could not agree on an alternative accommodation, Howard resigned on September 18. Bothwell urged her to reconsider. "[A]fter talking with counsel," Howard declined Bothwell's proposal that a mutually-agreed-upon third party inspect the pharmacy and determine whether her service animal would pose a risk, stating, as she repeated at trial, that she would not accept any accommodation other than bringing her service dog into the pharmacy.

---

[1]But on August 13, Howard's attorney advised Bothwell that Howard "does not merely require the dog to be by her side for six months. She needs the dog with her all the time to protect her from undetected high and low blood sugars."

-2-

Howard filed this lawsuit on February 25, 2021, alleging that Bothwell's failure to make a reasonable accommodation violated the Americans with Disabilities Act (ADA). 42 U.S.C. § 12112(a). The Complaint alleged that her requested accommodation -- "to have her service dog accompany her to work in the non-sterile areas of the pharmacy" -- "was reasonable and did not create an undue burden on Bothwell" and "would have enabled her to perform the essential functions of her position." After a four-day trial, the jury returned a verdict for Howard, awarding her $111,548.86 in compensatory and $18,451.14 in emotional damages. Bothwell appeals the district court's denial of its motion for judgment as a matter of law. We review the denial of a motion for judgment as a matter of law *de novo*, construing the record in the light most favorable to the prevailing party. Pittari v. Am. Eagle Airlines, Inc., 468 F.3d 1056, 1061 (8th Cir. 2006). Concluding this appeal is governed by our recent decision in Hopman v. Union Pac. R.R., 68 F.4th 394 (8th Cir. 2023), cert. denied, 144 S. Ct. 1003 (2024), we reverse.

## I.

Title I of the ADA, entitled Employment, provides that no covered employer or labor organization "shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The statute defines discrimination to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee," unless an employer "can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." § 12112(b)(5)(A). A qualified individual is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." § 12111(8).

As we explained in <u>Hopman</u>, the Equal Employment Opportunity Commission's implementing regulations "define the term 'reasonable accommodation' as including three distinct requirements." 68 F.4th at 397, citing 29 C.F.R. § 1630.2(o)(1). The first, not at issue here, is modifications or adjustments that enable a job applicant to be considered. The second, which most failure-to-accommodate cases have involved, is "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). The third category is "[m]odifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment *as are enjoyed by its other similarly situated employees without disabilities*." § 1630.2(o)(1)(iii) (emphasis added). We confirmed in <u>Hopman</u> that Congress in the ADA intended to bar employer discrimination in providing a benefit or privilege offered to employees "that does not directly affect the ability of . . . a qualified individual to perform [her] job's essential functions." 68 F.4th at 396.

The EEOC's Interpretive Guidance further explains when the ADA imposes a *duty* on the employer to provide a benefits and privileges accommodation:

> [I]f an adjustment or modification assists the individual throughout his or her daily activities, on and off the job, it will be considered a personal item that the employer is not required to provide. Accordingly, an employer would generally not be required to provide an employee with a disability with a prosthetic limb, wheelchair, or eyeglasses. *Nor would an employer have to provide as an accommodation any amenity or convenience that is not job-related . . . that is not provided to employees without disabilities.*

\*    \*    \*    \*    \*

-4-

[The obligation] applies to all services and programs provided in connection with employment, and to all non-work facilities *provided or maintained by an employer* for use by its employees. Accordingly, the obligation to accommodate is applicable to *employer sponsored* placement or counseling services, and to *employer provided* cafeterias, lounges, gymnasiums, auditoriums, transportation and the like.

* * * * *

[A]n individual with a disability is "otherwise qualified" . . . if he or she is qualified for a job, except that, because of the disability, he or she needs a reasonable accommodation to be able to perform the job's essential functions.

29 C.F.R. Part 1630 App., § 1630.9 (emphasis added; legislative history citations omitted). When there is no duty to provide an adjustment or modification because it is considered a personal item under the regulations, "it would not be a violation of this part for an employer to provide any of these personal modifications or adjustments." Id.

## II.

Consistent with most failure-to-accommodate complaints, Howard's Complaint alleged that her requested accommodation "would have enabled her to perform the essential functions of her position." There was a problem proving this allegation, both initially and as the dispute progressed to trial. When Howard requested the accommodation, she had performed the essential functions of her position at the pharmacy without a service dog to Bothwell's satisfaction. In denying Bothwell's motion for summary judgment on other grounds, the district court noted that Bothwell "does not dispute [Howard] . . . was qualified to do her job with or without reasonable accommodation."

As the case proceeded to trial, counsel for both parties were aware that the district court in Hopman, an Eastern District of Arkansas case, had ruled that the ADA permits an employee with a disability to request a service dog accommodation to enjoy equal benefits and privileges of employment, as defined in the EEOC regulations and technical guidance, despite being able to perform the essential functions of the job without the requested accommodation. At trial, plaintiff Hopman proceeded accordingly but failed to present evidence of a denied benefit or privilege. Accordingly, the district court granted judgment as a matter of law to the employer. Hopman's appeal of that ruling was pending before this court when Howard's trial began. Thus, like counsel for plaintiff Hopman, counsel for plaintiff Howard, even without an Eighth Circuit case on point, had notice of what must be proved in an equal-benefits-and-privileges-of-employment accommodation claim brought under 29 C.F.R. § 1630.2(o)(1)(iii).

At trial, after Howard presented her case-in-chief, Bothwell moved for judgment as a matter of law, arguing, *inter alia*, that Howard failed to establish that she required the accommodation either to perform the essential functions of the job or to access the benefits and privileges of employment. In arguing this motion, Bothwell's lawyer asked whether Howard was claiming she was denied the ability to perform the essential functions of her job; if not, language including that theory should be removed from the proposed verdict-directing instruction. The district court observed that Howard "did her job from . . . March of '20 through August of '21 . . . [and] by her own admission, [received] good recommendations and got raises. There was no testimony that anything changed. So . . . how is it that she wasn't able to perform the essential functions of her job without an accommodation?"

Howard's lawyer responded that her claim is that Howard "isn't able to perform at her optimum," citing the district court decision in Hopman. After more discussion, Howard's attorney stated, "I would be fine with amending the jury instruction to specify that [access to the benefits and privileges of employment] is the specific

-6-

claim." Accordingly, the district court modified its verdict-directing instruction so that it asked whether the requested accommodation would "enable plaintiff to enjoy equal benefits and privilege of employment as are enjoyed by similarly situated employees without disabilities," with no alternative reference to an essential-functions claim. The court rejected as incomplete Bothwell's proposed instruction defining benefits and privileges of employment. Thus, as in Hopman, Howard "limited [her] failure-to-accommodate claim [as submitted to the jury] to the denial of equal benefits and privileges of employment." 68 F.4th at 399.

After the jury verdict, Bothwell renewed its motion for judgment as a matter of law and moved for a new trial, arguing, *inter alia*, that Howard failed to show that the service dog accommodation was necessary to access the benefits and privileges of employment and the verdict was against the weight of the evidence. The district court denied the motion, concluding without the benefit of our impending decision in Hopman that there was sufficient evidence for the jury to find that Howard had established the elements of her claim. Regarding Bothwell's reliance on the district court opinion in Howard, the district court described the opinion as "instructive," "not binding [and] also unpersuasive." Bothwell appeals, arguing this issue and others we need not consider.

### III.

In Hopman, the ADA plaintiff was a military veteran suffering from post-traumatic stress disorder who worked as a Union Pacific train conductor. He purchased a service dog to help cope with his symptoms; the railroad granted other accommodations but denied his request to bring the dog onto moving freight trains while he worked. Hopman was able to perform the essential functions of his job with or without the requested accommodation; indeed, he was promoted from conductor to engineer during the litigation. 68 F.4th at 395-96. We agreed with the district court that "'benefits and privileges of employment' (1) refers only to employer-

provided services; (2) must be offered to non-disabled individuals in addition to disabled ones; and (3) does not include freedom from mental or psychological pain," and that Hopman "failed to introduce the evidence needed to prove that claim." Id. at 399. We affirmed the grant of judgment as a matter of law in favor of the employer. Bothwell argues that Howard, like Hopman, "presented no evidence that she needed her service animal to obtain a privilege or benefit of employment."

Bothwell's written "Accommodation Packet" included the question, "Please describe in detail what specific parts of your job you are unable to perform because of your impairment?" Howard responded, "A diabetic service animal would enhance my ability to function in all aspects of my role as a pharmacist." This is a job performance argument. See Hopman, 68 F.4th at 398. At trial, Howard was asked on direct examination, "How do you believe Corry gives you the ability to effectively do your job as a pharmacist?" Howard responded that the service animal "in a sense frees up my mind a bit in not having to be quite as on top of my sugars . . . and not be so anxious." She was then asked:

> Q   Are there ways that you feel like having Corry at work with you allows you to enjoy the same benefits as the other employees have in the pharmacy without disabilities?
>
> A   Yes. . . . I imagine that other employees have the ability to manage their conditions however they see fit and with Corry being there I'm able to do the same thing, manage my diabetes and not having my employer dictate what I can and can't do, especially when they've never talked to my physician or know anything about my diabetes.

This again is a job performance argument. Id. In lengthy opening and rebuttal closing arguments, counsel for Howard had little more to say on this subject:

> [Y]ou'll get to consider . . . whether [the requested accommodation] would have enabled Ms. Howard to enjoy the equal benefits and

privileges of employment as are enjoyed by other similarly situated employees . . . who get to go to work in the pharmacy and . . . don't have to worry about what their blood sugar is and . . . how that blood sugar might affect them 5, 10, 15, 20 years down the road . . . [and] weren't worrying about whether or not their legs will be able to stand up when they're walking across the pharmacy because their blood sugar has . . . dropped and they're having a hypoglycemic episodes, those privileges that not many people think about until they don't have them.

* * * * *

[The instruction] will also ask you to find that she lost the equal benefits and privileges enjoyed by others, mentioned that earlier. None have been identified other than feeling safe. But no one else has a dog in the pharmacy. No one else has that right to feel safe at work. It's the benefits enjoyed by others.

As we said in Hopman, "this is certainly a fair point. But it is a job performance argument." Id. The governing regulation limits an employer's ADA *duty* to make this accommodation to "employer sponsored placement or counseling services, and to employer provided [facilities]." 29 C.F.R. Part 1630 App., § 1630.9. The limitation reflects long-standing judicial and agency efforts to keep accommodation *requirements* "within manageable bounds." Alexander v. Choate, 469 U.S. 287, 299 (1985). The employer's duty to provide "equal benefits and privileges of employment" is limited by the plain text of the regulation. Hopman, 68 F.4th at 400. We reject Howard's argument that we should "limit the holding in Hopman . . . to circumstances where the service animal's function is limited to that of an emotional support animal," which is a misstatement of the underlying facts in Hopman. In essence, Howard argues that § 1630.2(o)(1)(iii) as construed in the EEOC's Interpretive Guidance on Title I and Technical Assistance Manual is an invalid agency interpretation of the governing ADA statutory provisions. That argument was not raised and is without merit.

At trial, Howard failed to identify any employer-sponsored benefit or program to which she lacked access. On appeal, she responds by noting that she presented evidence that the service animal "assist[s] her in the management of her chronic disease." But this is in substance no different than the argument by Mr. Hopman's counsel that he "should not have to endure physical and emotional pain his [disability brought to] work." Id. at 401. Under the controlling regulations, "if an adjustment or modification assists the individual throughout his or her daily activities, on and off the job, it will be considered a personal item that the employer is not *required* to provide." 29 C.F.R. Part 1630 App., § 1630.9 (emphasis added). "Providing a service dog at work so that an employee with a disability has the same assistance the service dog provides away from work is not a cognizable benefit or privilege of employment." Hopman, 68 F.4th at 401.

Because Howard has not identified an employer-sponsored or employer-provided benefit or privilege of employment that her proposed accommodation would enable her to access, the only ADA accommodation claim presented to the jury, the district court erred in denying Bothwell's post-verdict motion for judgment as a matter of law. On appeal, Howard relies on non-binding, out-of-circuit precedents -- mostly essential function cases -- that we distinguished or found unpersuasive in Hopman, 68 F.4th at 401-02 n.4, such as Nawrot v. CPC International, 259 F. Supp. 2d 716, 724-26 (N.D. Ill. 2003). Hopman is binding Eighth Circuit precedent for our panel. See Mader v. United States, 654 F.3d 794, 800 (8th Cir. 2011) (en banc).

**IV.**

At oral argument, Howard's counsel argued that her initial essential-functions claim was not waived because she submitted a proposed jury instruction on that theory, and only agreed to proceed on a benefits-and-privileges theory because that was the district court's view of the case. That is not how one preserves an issue for appeal. Howard abandoned her essential-functions claim when she agreed not to

-10-

submit a jury instruction on that issue during argument on Bothwell's motion for judgment as a matter of law. Howard's counsel apparently regretted this tactical decision after Bothwell finished presenting its case, because she requested a verdict-directing instruction at the close of all the evidence that included essential functions language. But she did not cross appeal the district court's decision not to give that proposed instruction. See El Paso Nat. Gas Co. v. Neztsosie, 526 U.S. 473, 479 (1999). The issue was not properly preserved for our review.

At the end of oral argument, Howard's counsel argued that if we reverse the denial of post-verdict relief, we should remand for a new trial, rather than granting judgment as a matter of law. In September 2020, Howard rejected all proffered accommodations and quit her job at Bothwell; she is now employed in a similar job elsewhere. Nowhere in her brief did Howard argue what issues should be available if the case were to be remanded. Indeed, her brief states that "[Howard] did not need the service animal to perform the essential functions of her job, but she did require it to be with her to provide alerts for high and low blood sugar instances." This issue, too, was not properly preserved for our review.

The district court's Order dated December 15, 2022 is reversed and the case is remanded with instructions to enter judgment in favor of Bothwell. Bothwell's motion to supplement the record is denied as moot.

_____